See also, D.C., 355 F.Supp. 947.

**GA ENTERPRISES, INC., suing derivatively on behalf of itself and Leisure Living Communities, Inc.**

v.

**LEISURE LIVING COMMUNITIES, INC., et al.**

**Civ. A. No. 73–430–F.**

United States District Court,
D. Massachusetts.

Oct. 23, 1974.

Mark Crane, Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., for John S. Swift.

Owen F. Clarke, Jr., Sullivan & Worcester, Boston, Mass., for Anne Bowron, Executrix.

John S. Hopkins, III, R. K. Gad, III, Ropes & Gray, Boston, Mass., for Gould H. Coleman.

David L. Weltman, Foley, Hoag & Eliot, Boston, Mass., for John S. Swift.

Gael Mahony, Hill & Barlow, Boston, Mass., for John Chamberlain.

John J. Curtin, Jr., Bingham, Dana & Gould, Francis H. Fox, Boston, Mass., for The First National Bank of Boston.

Edward F. McLaughlin, Jr., John C. Wyman, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for Leisure Living Communities, Inc.

Paul F. Markham, Boston, Mass., for Bernard J. Mayer, Jr.

Robert S. Frank, Jr., Choate, Hall & Stewart, Boston, Mass., for John B. Roberts.

Owen F. Clarke, Jr., Sullivan & Worcester, Boston, Mass., for Scott Bowron.

Jerome E. Rosen, Lappin, Rosen, Goldberg, Slavet, Levenson & Wekstein, Boston, Mass., Ronald W. Kuzon, Boston, Mass., co-counsel, for plaintiff.

## OPINION

FREEDMAN, District Judge.

This is a stockholder derivative suit, under Federal Rule of Civil Procedure 23.1, on behalf of Leisure Living Communities, Inc. ("Leisure Living") alleging waste, mismanagement and fraud on the part of the directors and The First National Bank of Boston ("Bank"). The action is presently before the Court on motions to dismiss by Leisure Living and The First National Bank.[1] After consideration of the pleadings, memoranda, and oral arguments, the Court ORDERS as follows:

I

■ Defendant Leisure Living has moved to dismiss the action for failure of plaintiff to adequately represent the interests of the other shareholders and the corporation. "Adequate representation" is a requirement of the rule governing stockholder derivative suits— Fed.R.Civ.P. 23.1. The decisions construing this term under both Fed.R.Civ.P. 23.1 and Fed.R.Civ.P. 23(a)(4) (rule governing class actions) employ a two-pronged test:

1. The interests of the unnamed plaintiffs must not be antagonistic to the interests of the representative party.

2. The representative party must vigorously and conscientiously prosecute the action.

*See*: duPont v. Wyly, 61 F.R.D. 615 (D.Del., 1973); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y., 1968); Mersay v. First Republic Corp. of America, 43 F.R.D. 465 (S.D.N.Y., 1968); First American Corporation v. Foster, 51 F.R.D. 248 (N.D.Ga., 1970).

Leisure Living has attacked GA's representation in this suit on both these grounds. The Court will first deal briefly with the "vigorous prosecution" contentions. I will not undertake to address Leisure Living's arguments point by point, since I am content that this test has been satisfied. The ponderous files in this matter should attest to the activity in the case. This Court has made three previous orders during the course of this litigation, only one of which was made without the participation of plaintiff. It is also well to note that proceedings have been conducted before the Magistrate. Further, plaintiff has been faced with several motions to dismiss and one for summary judgment. It would be folly to proceed further with discovery before a resolution of the instant motions. The representa-

1. Previous orders in this case were entered on March 7, 1973, July 25, 1973, and December 4, 1973.

tion of plaintiff in this suit has been both competent and vigorous.

■ The Court is troubled, however, by the relationship between GA's principal, George Kattar, and Leisure Living. If the interests of GA are sufficiently adverse to the interests of the other shareholders and the corporation on whose behalf this suit is brought, the action must be dismissed for failure to comply with Fed.R.Civ.P. 23.1.

Plaintiff seeks to have the Court apply the rule that, in order for a conflict to be fatal under Rule 23.1, it must go to the subject matter of the suit. First American Corporation v. Foster, *supra*. Defendant urges the broader test of duPont v. Wyly, *supra*, which holds that fatal conflicts may be found beyond the subject matter of the immediate suit in which the adequate representation is being questioned.

First American Corporation v. Foster, *supra*, was a case in which plaintiffs were former officers of the corporation. As such, they were alleged to have "ulterior" motives in bringing the suit.

> In addition, the fact that individual plaintiffs may have interests which go *beyond* the interest of the class, but are at least coextensive with the class interest, will not defeat the class. Such appears to be the case here. *Id.*, 51 F.R.D. at 250.

In *Foster* there was only the fact that the named plaintiffs had been officers of the corporation that could have occasioned the inadequate prosecution of the case. In *duPont*, on the other hand, there was a law suit pending between the parties before the derivative suit was brought. This, coupled with the fact that the representative plaintiff only owned five shares of stock, led the Court to conclude that the provisions of Rule 23(a)(4) were not satisfied. It

should also be noted that this suit was a class action, not a derivative suit under 23.1.

■■ Neither of these cases is controlling in the present action, but it seems clear that where the interests of the named plaintiff and the shareholders on whose behalf he is suing, are antagonistic, and this antagonism is the kind which could influence the conduct of the case, such a situation should be resolved by dismissal pursuant to Rule 23.1. There is nothing that this Court sees in the underlying policy for the rule which would require limiting the inquiry for possible conflicts to the subject matter of the suit. Thus, the Court will consider all potential sources of conflicting interests.

■■ The parties have filed extensive memoranda and supporting documents. Certain uncontroverted facts appear from this documentation. GA Enterprises, Inc., the plaintiff herein, is a wholly owned subsidiary of Tri-State Development Corporation ("Tri-State"), a Delaware corporation controlled by George T. Kattar. Kattar is president and chief executive officer of GA, as well as of Tri-State, Northeast Investment Co. Inc., S.E. Enterprises, Inc., Community Investment Corporation, American Heritage Properties, Inc. and Second Presidential Corporation. Kattar's status in these various entities is important since the identity of the person who controls the litigation may be a critical element in the determination of a 23.1 motion. *See* Nolen v. Shaw-Walker Company, 449 F.2d 506 (6th Cir., 1971). GA concedes that Kattar controls these several companies. Certain of these business entities have been involved in transactions with Leisure Living and its wholly owned subsidiary, New England Properties, Inc. Plaintiff became the owner of 10,000 shares of Leisure Living common stock [2] under an agreement dated Janu-

---

**2.** This holding represents less than 1% of the outstanding stock according to the affidavit of Warren Greenlaw, an employee of

transfer agent, The First National Bank of Boston.

ary 27, 1970. As a result of this transaction and others with Kattar-controlled companies, there are presently several claims pending between these companies and Leisure Living. Leisure Living's contentions of named plaintiff/shareholder conflict stem principally from these claims. Such claims may or may not be fatal; the outcome of this motion turns on the extent, character, and potential for conflict of these claims.

*Claims involving Kattar-controlled companies and Leisure Living:*

1. Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.

This is a suit in the Maine state court arising out of an agreement by Leisure Living to pay Northeast Investment Co., Inc. ("Northeast"), a Kattar company, $50,000 per year plus an option on 20,000 shares of stock, in return for a guaranty of certain notes. The case was brought six months after the instant case. It seeks liquidated damages and equitable relief on the stock option. The matter is still pending.

2. *Claim concerning purchase of stock.*

This matter apparently concerns an oral agreement by the late president of Leisure Living, J. Allan Bowron, to repurchase the 10,000 shares of Leisure Living stock from GA at a price of $30 per share. Plaintiff represents that he realizes the claim is a worthless one and has taken no action beyond a discussion with counsel.

3. Leisure Living Communities, Inc. v. S.E. Enterprises, Inc.

Leisure Living brought this suit in the United States District Court for the District of Maine and prevailed. The matter is presently on appeal. Suit was brought on the judgment in Middlesex Superior Court, Massachusetts, and thereafter a trustee attachment and preliminary injunction were granted to secure the judgment.

4. There are further claims involving third parties arising out of the original transaction in 1970. It does not appear that any of these claims are presently in litigation.

5. Finally, there is a claim for certain items of furniture, allegedly owned by GA, which Leisure Living removed from a land sales office formerly run by GA. This matter has not yet progressed beyond the demand stage.

Another matter which must be considered for purposes of this motion is item numbered "6" in the Second Affidavit of John C. Wyman. This concerns discussion of ". . . possible settlement of the various matters of litigation and dispute between Leisure Living Communities, Inc. and various corporations controlled by Mr. Kattar." Wyman, counsel for Leisure Living, was accompanied by the president of the company at this conference with George Kattar and his attorney.

The Court is of the view that all the claims taken together are sufficiently adverse to the interests of the shareholders to require dismissal of the action. It is the totality of the relationship between the Kattar companies and Leisure Living which mandates this conclusion. Were there simply one pending suit between the parties it is quite possible that the same result would not obtain. The Court is fearful that, given the complex business arrangements involved, this suit, as one of several between the parties, runs the risk of losing its special character as a derivative suit.

Accordingly, the motion is allowed and the complaint is dismissed.

The ruling on this motion is dispositive of the case, but in the event further proceedings should be necessary, the Court hereinafter enters its findings and conclusions on the motion to dismiss of defendant, The First National Bank of Boston.

## II

■■ Defendant Bank has moved to dismiss pursuant to Fed.R.Civ.P. 23.1 on the ground that plaintiff failed to make demand for relief on the shareholders of Leisure Living prior to commencing the action. Rule 23.1 provides in pertinent part:

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

The law of the forum determines whether demand upon the shareholders or members is "necessary." Massachusetts, the cognizant forum, requires such a demand. Pomerantz v. Clark, 101 F. Supp. 341 (D.Mass., 1951). There is no question but that demand was never made; the sole issue, then, for purposes of this motion is whether plaintiff has set forth sufficient reasons to excuse demand.

■ Paragraph No. 17 of the complaint points out several reasons to justify the failure of demand. Through brief and argument the parties have whittled the reasons down to one:

. . . a resolution of the shareholders directing the institution of this action would be futile and useless because its prosecution would be placed in the control of Directors who are Defendants herein, and who own or control a majority of the shares issued and outstanding.

The Bank contends that the reasons for failure of demand are insufficient to meet the requirement of pleading "with particularity" in the rule, and, further, that, in any event, the alleged futility was not present. The Court is aware of the special pleading standards of Rule 23.1, see, e. g. In Re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir.), cert. denied 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973), but is satisfied that this statement from paragraph No. 17, together with the naming of defendants who owned a majority of the stock, is sufficient to fulfill the pleading requirement even under the stringent fact-pleading provision.

One of the original defendants, Anne Bowron, executrix of the estate of J. Allan Bowron, received summary judgment by order of this Court on December 4, 1973. Anne Bowron's holding of 400,000 shares is essential to a determination of futility as to a majority of the shares. If these shares are deemed to be disinterested as to the suit by the plaintiff, then the shares as to which demand would be futile constitute a minority of those outstanding. In that event, demand on the shareholders was required and the Bank is entitled to prevail on its motion.

■ The Bank maintains in its memorandum that demand may be excused as to certain defendants and required as to others. As authority for this proposition it cites *dicta* from this Court's order of July 25, 1973. That may well have been the case with defendant Chamberlain, but where the cause of action against defendant Bank is so closely intertwined with the claims against director/shareholder defendants, the motion under Rule 23.1 will stand or fall as to all defendants. *See* Dopp v. American Electronic Laboratories, Inc., 55 F.R.D. 151 (S.D.N.Y., 1972).

■ There are no hard and fast rules as to what is required to make a showing of futility. Such a determination is within the sound discretion of the Court. deHaas v. Empire Petroleum Company, 286 F.Supp. 809, 813 (D.Colo., 1968).

■ As a starting point it is clear from the complaint that, if the 400,000 shares were in the hands of J. Allan Bowron, no demand would have been necessary. However, Bowron died on May 8, 1971, and this action was com-

menced in 1973. Anne Bowron, his wife and the executrix of his estate, was named as a defendant. The Bank contends that Mrs. Bowron should not have been named in the suit and that the shares held by her in her representative capacity were disinterested *ab initio*.

The Bank's argument that Mrs. Bowron should not have been a defendant is well taken; it was this same rationale which led the Court to grant summary judgment in her favor. This is not to say, however, that she was not originally made a party to the suit in good faith.

Plaintiff agrees that summary judgment was appropriate, but maintains that a demand upon Mrs. Bowron would nevertheless have been futile for several reasons:

1. Her husband, the late J. Allan Bowron, was a founder with defendant, Gould H. Coleman, of Leisure Living.

2. Defendant Scott Bowron, son of Mrs. Bowron, was a director of Leisure Living.

3. She was a creditor of Leisure Living since she was receiving a "death benefit" from the company spread out over a number of years.

The fact that she was a creditor of Leisure Living does not support plaintiff's position; in fact, it points to a lack of futility. A creditor would benefit by a recovery for the corporation through the derivative suit. Further, her creditor status is as the wife of the decedent, and not as the executrix of the estate, the capacity in which she held the stock.

Further, it is clear that the late Mr. Bowron's friendship and association with defendant Coleman is insufficient to support a finding of futility. However, the Court views the relationship of Mrs. Bowron to Scott Bowron as significant. The argument that this kinship, while perhaps applicable to an action against Scott Bowron, is not applicable to the

Bank has been earlier rejected. This relationship, coupled with the fact that Mrs. Bowron had been originally named as a defendant, convinces the Court that a demand upon Mrs. Bowron as executrix of the estate of J. Allan Bowron would have been futile.

Accordingly, the motion of defendant First National Bank of Boston is hereby denied. As noted above, the Court's ruling on this motion is academic in view of its action in ordering dismissal.