**G. A. ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**LEISURE LIVING COMMUNITIES,**
**INC., et al., Defendants-Appellees.**

No. 75–1003.

United States Court of Appeals,
First Circuit.

Argued April 8, 1975.

Decided May 27, 1975.

Jerome E. Rosen, Boston, Mass., with whom Lappin, Rosen, Goldbert, Slavet, Levenson & Wekstein, Boston, Mass., was on brief, for plaintiff-appellant.

John C. Wyman, Boston, Mass., with whom Peter M. Lauriat and Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., were on brief, for Leisure Living Communities, Inc., defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

G. A. Enterprises, Inc. ("GA"), plaintiff in a stockholder derivative action, appeals from a judgment of the district court allowing a motion to dismiss filed by Leisure Living Communities, Inc., the company for whose alleged benefit it had brought the derivative action.[1] The court held that GA could not, as Fed.R. Civ.P. 23.1 requires, "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation . . . ." The court's ruling was not based on any doubts as to the competence of counsel or the vigor with which the case was being pressed in its initial stages. Rather the court was troubled by the relationship between GA's principal, George Kattar, and Leisure Living, concluding that the interests of Kattar, and therefore GA, were adverse to the interests of the other shareholders of Leisure Living, and that this "antagonism" was the kind which could influence the conduct of the litigation.

Kattar, who besides controlling GA also controls other companies, had in 1970 entered into complex business arrangements encompassing the sale of various Kattar controlled entities and assets to Leisure Living. That arrangement soon turned sour spawning litigation between Kattar and his companies, on the one hand, and Leisure Living on the other. A Kattar company other than GA has sued Leisure Living for liquidated damages and equitable relief upon an agreement by Leisure Living to pay that company $50,000 a year plus an option on 20,000 shares of stock. Leisure Living had itself sued a second Kattar-controlled corporation in the District of Maine, and was awarded a judgment (recently affirmed by this court) for $240,000 plus interest. A trustee attachment and preliminary injunction against still another Kattar-controlled enterprise was obtained by Leisure Living in Massachusetts to secure satisfaction of that judgment. Other cross claims and obligations exist.

It was in this setting that the district court considered the propriety of

1. Brought against the principal officers and directors of Leisure Living, who are also its major stockholders, and others, the action charges mismanagement and waste.

permitting GA to maintain on behalf of Leisure Living a derivative suit filed well after eruption of the wideranging disputes between Leisure Living and Kattar. In the court's view

> "all the claims taken together are sufficiently adverse to the interests of the shareholders to require dismissal of the action. It is the totality of the relationship between the Kattar companies and Leisure Living which mandates this conclusion. Were there simply one pending suit between the parties it is quite possible that the same result would not obtain. The Court is fearful that, given the complex business arrangements involved, this suit, as one of several between the parties, runs the risk of losing its special character as a derivative suit."

In dismissing plaintiff's action, the court emphasized that the existence of outstanding claims between GA's principal and Leisure Living "may not be fatal; the outcome of this motion [to dismiss] turns on the extent, character and potential for conflict of these claims". On this record, which demonstrates not only an obvious conflict of interest but also the magnitude of Kattar's outside interests compared to GA's stake in the derivative suit,[2] we affirm the district court.

GA contends that its outside relationships and interests will not preclude it from acting in the other shareholders' best interests. In fact, it says, "these related matters indicate, if anything, that plaintiff would have been more vigorous than it might otherwise be". It invokes the rule that, "The fact that individual plaintiffs may have interests which go beyond the interest of the class, but are at least co-extensive with the class interest, will not defeat the class." First America Corp. v. Foster, 51 F.R.D. 248, 250 (N.D.Ga.1970).[3] But we think the district court could conclude that GA's interests were not "co-extensive". GA values its claim on behalf of Leisure Living in the neighborhood of $2,000,000. Even if the corporation's claim were assumed to be worth, unrealistically, its face value, its value to a holder of less than 1% of the company's stock would be relatively small, far less than the amounts at stake in the disputes between Kattar's companies and Leisure Living. In these circumstances, the court could conclude that the dog might soon wag the tail.

GA's own interests, or at least the interests of its principal, suggest that from its standpoint the "highest and best" use of the derivative suit would be as a weapon in the total Kattar arsenal, to be either pursued, de-emphasized, or settled as the future course of the larger claims might dictate. Since the suit threatens Leisure Living's managers with individual liability, it provides leverage that could affect how doggedly they pursue Leisure Living's own claims and defenses against Kattar in other areas.[4] So manipulated, the derivative suit would serve interests beyond and perhaps contrary[5] to those of the other minority stockholders.

---

**2.** GA's stock interest in Leisure Living, acquired as part of the 1970 transaction, is relatively small—less than 1% of the outstanding shares.

**3.** The rule in *First America Corp.* is derived from the provisions governing class actions under Fed.R.Civ.P. 23(a)(3)–(4), rather than those for derivative suits such as presented here. The standards are essentially the same, however, and cases interpreting Rule 23 may be effectively utilized in analyzing the requirements of 23.1. *See* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1833 at 393 (1972); *cf.* Quirke v. St. Louis-San Francisco Ry., 227 F.2d 705 (8th Cir. 1960).

**4.** The district court took note of an affidavit from Leisure Living's counsel that he and the president of Leisure Living had conferred with Kattar and his attorney concerning possible settlement of the litigation and disputes between Leisure Living and various corporations controlled by Kattar.

**5.** To the extent they are creditors of Leisure Living, GA (and its principal) might, of course, wish to avoid harming the company financially. But Leisure Living has claims of its own against the Kattar concerns. The situation is multi-faceted; while at any given moment pursuit of the derivative suit in a manner favorable to other stockholders might serve Kattar's interests, it equally might not.

It is true that the suit could not be settled without court approval. However, a court's ability to oversee complex litigation and understand all its nuances is limited by its many other duties. In an adversary system a court must rely largely on the parties. Rule 23.1 recognizes the binding effect of derivative litigation on all stockholders and the company, and accordingly forbids maintenance of such a suit by a plaintiff unable to provide fair and adequate representation. On the present facts, we find no error in the court's finding that GA could not assure adequate representation.

This issue is not, as has been suggested, a matter of accepting or rejecting a novel bright-line rule. A plaintiff is not disqualified under Rule 23.1 merely because of the existence of interests beyond those of the class he seeks to represent, so long as he shares a common interest in the subject matter of the suit. And purely hypothetical, potential or remote conflicts of interest do not disable him. *See generally* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1833 (1972). Thus, it is sometimes said that the antagonism of interests "must go to the subject matter of the suit"— meaning that antagonism irrelevant to the proceeding may be disregarded. *See, e. g.,* Redmond v. Commerce Trust Co., 144 F.2d 140, 151 (8th Cir. 1944). But these principles have not been read to prevent a court from taking account of outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit. *See, e. g.,* du Pont v. Wyly, 61 F.R.D. 615 (D.Del.1973); Nolen v. Shaw-Walker Co., 449 F.2d 506, 508–10 (6th Cir. 1971). In such cases the conflict of interest is not merely potential but is immediate and obvious; the outside influences are not hypothetical but constitute a present threat to the conduct and indeed to "the subject matter" of the suit. Given extrinsic facts of sufficient strength, dismissal under Rule 23.1 is warranted.

Affirmed. Costs to appellee.