Kenneth G. ROBINSON II, Individually and derivatively on behalf of Computer Servicenters, Inc., and all other shareholders thereof similarly situated, Plaintiffs,

v.

COMPUTER SERVICENTERS, INC., A. Derril Crowe, Lamar M. Campbell, Walter F. Scott, Jr., Paul R. Butrus, Sterne, Agee & Leach, Inc., Defendants.

Civ. A. No. 76–G–0012–S.

United States District Court,
N. D. Alabama, S. D.

Dec. 30, 1976.

W. Eugene Rutledge, Rutledge & Pruett, Birmingham, Ala., for plaintiffs.

James A. Harris, Jr., Sirote, Permutt, Friend & Friedman, Birmingham, Ala., for all defendants except Sterne, Agee & Leach.

Drayton Nabers, Jr. and Geroge G. Lynn, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for Sterne, Agee & Leach.

## MEMORANDUM OPINION

GUIN, District Judge.

This case presently is before the Court on defendants' (except Sterne, Agee & Leach, Inc.) Amended Motion To Dismiss Action As A Derivative Action and plaintiff's Opposition thereto. The Court will treat this Motion as a Motion for Partial Summary Judgment that addresses itself to the derivative claims in plaintiff's Amended Complaint.[1] There is no genuine issue as to any material fact.[2] By reason of the Court's conviction that the plaintiff does not fairly and adequately represent the interests of similarly situated shareholders of Computer

---

1. In reaching its conclusion herein, the Court has considered the pleadings and answers to interrogatories herein. The Court has also considered the Counterclaim of Robinson and the Decree of September 16, 1976, in the case of *Computer Servicenters, Inc. v. Kenneth G. Robinson, II,* pending in the Circuit Court for the Tenth Judicial Circuit of the State of Alabama. The state court pleadings were submitted to this court as attachments to Defendants'

"Amended Motion to Dismiss Action as a Derivative Action." Their authenticity is not questioned by plaintiff.

2. The "facts" considered by the Court in reaching its conclusion herein are (a) the derivative claims asserted by Robinson on behalf of CSI and its stockholders, (b) the individual claims asserted by Robinson against CSI, and (c) the claims asserted by CSI against Robinson.

Servicenters, Inc. in enforcing its alleged rights, as required by Rule 23.1 of the Federal Rules of Civil Procedure, the defendants' Motion for Partial Summary Judgment will be granted.

## I. *The Federal Court Action.*

According to. the allegations of the Amended Complaint, from May of 1970 until September 4, 1975, Kenneth G. Robinson, II (hereinafter, "Robinson") served as President and Chief Executive Officer of Computer Servicenters, Inc., (hereinafter, "CSI"). On January 6, 1976, Robinson instituted the instant action against CSI, three of the directors of CSI, Paul Butrus (the current Chief Executive Officer of CSI), and the stock brokerage firm of Sterne, Agee & Leach, Inc. The original Complaint recited that Robinson sued "individually and derivatively on behalf of CSI." On February 25, 1976, the Complaint was amended to recite that Robinson sued "individually and derivatively on behalf of CSI, and all other shareholders thereof similarly situated." Robinson's amended complaint alleges both a plethora of Federal Securities' Law violations [3] and several "pendent" claims.[4] As will be discussed in detail hereinafter, Robinson's amended complaint states substantial individual claims against CSI and states derivative claims on behalf of CSI, and CSI stockholders.

Robinson alleges that he is a stockholder of CSI and that the defendants are participants in a conspiracy to depress the value of CSI's stock. The alleged purpose of the conspiracy was to induce CSI shareholders to sell their stock to CSI at a price lower than its true value. Ultimately, according to Robinson, the purpose of the depressive actions was to enable defendants to transform CSI from a publicly-owned to a privately-owned corporation so that the individual directors could profit from the purchase of the stock at a depressed value. Robinson alleges that, unknown to him, a condition of his 1975 employment contract with CSI was that he participate in the alleged conspiracy to depress the value of CSI stock. Robinson states that he refused to participate in the conspiracy, suggesting alternative, legitimate means by which the CSI directors could accomplish their goals. He alleges that these individual defendants then, as a result of his refusal, unlawfully terminated his employment contract and employed defendant, Butrus, to serve as Chief Executive Officer of CSI. Allegedly, defendant Butrus was willing to aid the defendant-directors in their conspiracy.

Robinson alleges that CSI proxy solicitations were misleading and contained material omissions, and that as a result of the statements and omissions, the individual defendants unlawfully obtained "many shareholder proxies" and voted them at a shareholder meeting. The following portion of Robinson's Amended Complaint sets forth the alleged results of the unlawful conduct of the defendants:

> The aforesaid wrongful conduct of the defendants has resulted in large monetary loss to CSI and its stockholders; has placed the reputation of CSI in jeopardy; has endangered the future of CSI by placing the highly technical business of CSI in the hands of a man without any experience in the data processing field; and has resulted in the depression of the value of stock of CSI.

> The plaintiff has been greviously [sic] injured and damaged by the wrongful acts of the defendants as aforesaid in that he entered into a contract in good

---

**3.** Plaintiff alleges violations of the following sections of the Securities Act of 1933: 11, 12, 12(2), 15 and 17(a); Robinson alleges violations of the following sections of the Securities Exchange Act of 1934: 7, 10(b), 12, 13, 13(d) and (e), 14, 14(d), (e) and (f), 15, 16, 18(a) and 20. Robinson also alleges that CSI violated Securities Exchange Act Rule 10(b).

**4.** Robinson alleges that the conduct of CSI and the individual defendants violated duties imposed under the laws of Alabama and Delaware, and the fiduciary duty owed by the individual defendants to CSI. Robinson also alleges that defendants (except Sterne, Agee & Leach, Inc.) unlawfully terminated his employment contract with CSI and asks that the court determine that he is not liable to CSI under an alleged stock subscription agreement.

faith which the "directors defendants" did not intend to honor unless he participated in the unlawful scheme to violate the federal securities laws as aforesaid, and that his contract has been breached because of his refusal to violate such laws; he has lost large sums of money and will be caused to lose large sums of money in the future; the value of his stock in CSI has been wrongfully and illegally diminished; his professional reputation has been maliciously damaged and impaired; his business relationship with CSI has been wrongfully and maliciously damaged and destroyed; and he has been caused to expend large sums of money for legal fees, accountant's fees and other costs and expenses in and about his efforts to enforce his rights and to defend himself and CSI against the wrongful activities of the defendants, all as a result of his failure and refusal to participate in the scheme of the "director defendants" to violate the securities laws of the United States and to breach his fiduciary obligations to the stockholders of CSI. (Last two paragraphs of Part IV of *Factual Allegations* in Amended Complaint.)

In Part VI of his Amended Complaint, *Prayer For Judgment,* plaintiff demands "judgment as follows:"

a. Requiring the defendants to respond in damages to the *plaintiff* in the amount of Five Hundred Thousand Dollars ($500,000.00). (Emphasis added.)

b. Requiring the defendants to account to [CSI] for their acts and conduct described in this complaint and to respond in damages therefor.

c. An adjudication that the *plaintiff* is not obligated to make any payments to [CSI] under the terms and conditions of the so-called "subscription agreement" which the defendants have sought to require of the *plaintiff.* (Emphasis added.)

d. That this Court will, upon a final hearing hereof, permanently enjoin the "director defendants" from continuing to serve as directors of CSI.

f. [Subpart e. omitted in Amended Complaint] This court will, upon a final hearing hereof, permanently enjoin all defendants from all further acts in pursuance of the conspiracy as aforesaid.

g. An award to plaintiff for costs and expenses of this action, including, without limitation discovery expenses to be taxed as costs, plus reasonable counsel and accountant's fees and experts' fees and costs.

h. For such other, further, additional and different relief as may be just and proper under the circumstances.

In this action Robinson, individually, seeks damages of Five Hundred Thousand Dollars ($500,000.00), declaratory relief for himself as to the alleged subscription agreement, an award to himself of costs, expenses and attorneys' fees, and injunctive relief. He seeks an accounting and unspecified damages for CSI as a result of the alleged unlawful acts of the individual defendants and Sterne, Agee & Leach, Inc.

## II. *The State Court Action.*

In May of 1976, CSI instituted an action in the Circuit Court for the Tenth Judicial Circuit of the State of Alabama seeking an injunction against Robinson for a violation of the non-compete agreements in Robinson's employment contracts, and seeking specific performance of an alleged stock subscription agreement by and between Robinson and CSI. Robinson counterclaimed *against CSI* and the individual director defendants claiming a total of Five Hundred Thousand Dollars ($500,000.00) in damages. The first count of the counterclaim alleged a fraudulent, *ultra vires* and unlawful breach of Robinson's employment contract; the second count of the counterclaim alleged fraud by CSI and the individual directors who are defendants in the instant action, because they entered into the 1975 employment contract with Robinson with no intention of performing it. Subsequently, Robinson's counterclaim was amended to delete the first count thereof. The Circuit Court has entered a judgment enjoining Robinson from competing with the corporation for one year. This judg-

ment currently is on appeal to the Alabama Supreme Court. The subscription agreement portion of CSI's complaint has been severed from the remainder of the state court action, because the judge concluded that Robinson was entitled to a jury trial on this question. With respect to the relief sought by Robinson in his state court action, Robinson's remaining count seeks recovery *against CSI* and the individual director defendants for Two Hundred Fifty Thousand Dollars ($250,000.00) on behalf of Robinson personally.

### III. *Adequacy of Representation.*

Rule 23.1 of the Federal Rules provides that a derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of similarly situated shareholders in enforcing the corporation's rights. The Rule does not substantively change previous law, but is intended to make explicit that adequacy of representation is a requirement of derivative as well as class actions. C. Wright and A. Miller, 7A *Federal Practice and Procedure* § 1833 at 393 (1972). Professors Wright and Miller go on to encapsulate the application of the requirement in Rule 23.1 in the following language:

> [The] most important element to be considered is whether plaintiff's interests are antagonistic to those he is seeking to represent. If there is a conflict of interest, the representation may well be deemed inadequate and the suit dismissed. Of course, a purely hypothetical dispute will not necessitate dismissal.

*Id.* (footnote omitted). The Court is of the opinion that this statement by Wright and Miller adequately summarizes the proper test of adequacy, and it is the ultimate standard that the Court has applied to reach its conclusion in this case.[5]

Even a brief review of the facts and allegations stated above renders inevitable the conclusion that Robinson's interests are actually, and not merely hypothetically, in acute conflict with the interests of both the CSI shareholders and the corporation itself. Robinson, individually, seeks damages in the sum of Seven Hundred and Fifty Thousand Dollars ($750,000.00) (Five Hundred Thousand Dollars ($500,000.00) in this Court, and Two Hundred and Fifty Thousand Dollars ($250,000.00) in the state court) from the very corporation on whose behalf he purports to sue derivatively. With respect to the claims by CSI against Robinson, individually, there is no question but that his interests are adverse to those of the shareholders and CSI. CSI is attempting to obtain specific performance by Robinson of an alleged stock subscription agreement, and Robinson is vigorously opposing this action. Unquestionably, the parties who would ultimately benefit from the specific enforcement of the alleged agreement are the CSI shareholders. Likewise, the party who would benefit from the denial of specific performance (an adjudication that Robinson is not liable under the subscription agreement) is Robinson personally. Similarly, it is undeniable that the complained-of competitive activities of Robinson, as judicially determined in the state court, are detrimental to the shareholders and to CSI. The corporation has succeeded in obtaining an injunction against these activities, and this decree is on appeal. Unquestionably, the injunction forbidding Robinson from competing with CSI is beneficial to it and its shareholders, whereas the alleged activities themselves, as well as the legal battle surrounding them, are detrimental to the interests of the shareholders and the corporation. Hence, Robinson is in the inherently anomalous position of arguing that he is an adequate representative of the shareholders in asserting the alleged rights of CSI in this Court, while at the same time he is suing CSI for some Seven Hundred and Fifty Thousand Dollars

---

5. Other authorities that discuss the adequate representation requirement of Rule 23.1, in the cases interpreting it, are J. Moore, 3B *Moore's Federal Practice* ¶ 23.1.16[3] at page 23.1115 n. 7 (Cum.Supp.1975); and Annot., *Fair Repre-* *sentation*—Rule 23.1, 15 ALR Fed. 954 (1973). The applicable principles as interpreted by these commentaries do not materially differ from the conclusions reached by Wright and Miller.

($750,000.00) in monetary damages, and has been enjoined from competing with the corporation. The extent, character and potential for conflict between Robinson's personal interests and the alleged derivative claims is apparent on the face of the pleadings and cannot reasonably be questioned.

█ A recent, well-reasoned case that interprets the adequacy requirement of Rule 23.1 in a similar factual context is *G. A. Enterprises, Inc. v. Leisure Living Communities, Inc.,* 66 F.R.D. 123 (D.Mass.1974), *aff'd,* 517 F.2d 24 (1st Cir. 1975). In that case, the District Judge applied a two-pronged test in analyzing the adequacy questions, concluding that the derivative plaintiff did not satisfy the first part of the test, that is, that the purported representative plaintiff's interests must not be antagonistic to the interests of the shareholders purported to be represented. In the *G. A. Enterprises* case, a corporation, nominally, was the plaintiff, but its principal was one George Kattar. As a result of certain transactions between companies controlled by Kattar and the defendant corporation, there were several other claims outstanding between these companies and the defendant corporation. The *G. A. Enterprises* Court reasoned that it was obliged to analyze the "extent, character, and potential for conflict of these claims," *id.* at 127, to determine whether the adequacy requirement of Rule 23.1 was met by the Kattar-controlled derivative plaintiff. In that case, there were at least five such claims. The District Judge recognized the inevitable realities of that situation: that is, in the negotiations between Kattar and the defendant corporation for the settlement of all these claims, settlement of the derivative action necessarily would be included, and in such circumstances there was an overwhelming probability that the "special character" of the derivative action would be lost. Robinson would have this Court distinguish the *G. A. Enterprises* case on the basis that several suits were involved in that case, whereas in the instant case only two suits are involved. However, this Court refuses to adopt such a technical and mechanistic approach. It is not the number of lawsuits that is controlling in situations where a derivative action plaintiff is also involved in litigation of personal claims and defenses against the corporation, but rather, it is the number and nature of the different *claims* involved which is determinative.

The First Circuit affirmed the actions of the District Judge in *G. A. Enterprises.* In response to the plaintiff corporation's contention that the related claims would, if anything, encourage it more vigorously to prosecute the derivative action, the First Circuit noted that the value of plaintiff corporation's individual claim in the derivative suit was *de minimis,* especially when compared to the amount involved in the other claims. Said the Court:

> In these circumstances, the court could conclude that the dog might soon wag the tail.
>
> GA's own interests, or at least the interests of its principal [Kattar], suggest that from its standpoint the "highest and best" use of the derivative suit would be as a weapon in the total Kattar arsenal, to be either pursued, de-emphasized, or settled as the future course of the larger claims might dictate. Since the suit threatens [defendant corporation's] managers with individual liability, it provides leverage that could affect how doggedly they pursue [defendant corporation's] own claims and defenses against Kattar in other areas. So manipulated, the derivative suit would serve interests beyond and perhaps contrary to those of the other minority stockholders.

517 F.2d at 26 (footnotes omitted).

█ *G. A. Enterprises* is compelling precedent for the dismissal of the instant derivative action. Just as the plaintiff's actual personal interest in the derivative action in that case was *de minimis,* Robinson's personal interest in the derivative aspect of the case *sub judice* is *de minimis.*[6] As has been discussed above, this conclusion is rendered inevitable by Robinson's

---

6. Robinson owns approximately five percent (5%) of the outstanding capital stock of CSI.

Amended Complaint and its Prayer. In addition, the situation *sub judice* presents a more dramatic conflict between Robinson's personal claims and the derivative claims than that presented in *G. A. Enterprises* because in this court, in the very same Complaint in which Robinson asserts the derivative claims, he also asserts several claims personal to himself, whereas in *G. A. Enterprises,* the personal claims of the controlling plaintiff were asserted in other actions.[7]

■ This Court would simply be closing its eyes to the realities of the situation were it to conclude that the "extent, character and potential for conflict of" the individual Robinson claims did not overwhelmingly outweigh whatever interest Robinson might have in seriously prosecuting the derivative claims for the benefit of CSI shareholders. The derivative action was established in order to serve a vital function for our economic system: to provide a feasible and economical means for a representative shareholder to enforce a corporate right on behalf of similarly-situated shareholders. To permit Robinson to reduce this mechanism to the status of a mere "weapon in his arsenal," to further his own personal claims and to aid his defense of the claims against himself personally, would be a serious violation of this Court's duty.

There are, of course, other cases similar to *G. A. Enterprises* and the instant situation in which the courts have ruled that the plaintiff was an inadequate representative. In *Quirke v. St. Louis-S. F. Ry.,* 277 F.2d 705 (8th Cir.), *cert. denied,* 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728 (1960), for example, the plaintiff was a shareholder in defendant corporation at all pertinent times. He sought to bring a derivative action on behalf of the corporation against its di-

rectors and some of its officers, and defendants moved to dismiss the action on the ground, among others, that plaintiff's interests were adverse to those of the other shareholders of the corporation, so that he did not adequately represent them. The basis of plaintiff's complaint was that the corporate directors and officers had wrongfully purchased stock in another corporation, but it was revealed that plaintiff himself was a stockholder in the other corporation and that he personally opposed the other corporation losing its independence to the defendant corporation. Certain of plaintiff's deposition testimony made it apparent that plaintiff was of the opinion that the purchase of the stock by defendant corporation was advantageous to it, but he felt that it was detrimental to the other corporation in which he held stock. In light of this a panel of the Eighth Circuit Court of Appeals, with now Supreme Court Justice Blackmun one of its members, held that plaintiff was "an unfit person" to maintain the derivative action. *Id.* at 708.

In the case *sub judice,* Robinson asserts that *Quirke* is distinguishable because he has not admitted that any of the actions taken by the individual defendants were advantageous to CSI, and, in fact, he clearly asserts just the opposite. However, this feature does not significantly distinguish *Quirke* from the instant situation because in two other respects Robinson is a much less adequate representative than was the plaintiff in *Quirke.* First of all, in *Quirke,* the derivative plaintiff was a mere shareholder in a competing corporation; Robinson, on the other hand is much more than a mere shareholder in another corporation. He is, in fact, the *owner* of a business that has been judicially determined to be *in di-*

---

7. Both the District Court and the First Circuit in the *G. A. Enterprises* case rejected the "subject matter" test pursuant to which a derivative plaintiff's conflicting claims did not render his representation inadequate unless they were based on the same subject matter as the derivative claims. The court is not inclined to adopt the "subject matter" test, not only because it is reading an unnecessary requirement into Rule 23.1, but also because of the difficulty inherent in applying such a test. Nevertheless, in light of the fact that Robinson is asserting his personal claims in the very action in which he is asserting the derivative claims, and the fact that the "subject matter" of all the claims, both personal and derivative, is the alleged unlawful and conspiratorial conduct of the defendants, the Court has concluded that the "subject matter" test is satisfied in the instant case.

644

*rect competition* with CSI, and he has been enjoined from continuing these activities. Secondly, in *Quirke* the derivative plaintiff's claim was pressed against the directors and certain officers of the corporation; Robinson, to the contrary, is personally asserting claims against *CSI* for Seven Hundred Fifty Thousand Dollars ($750,-000.00). Hence, despite the fact that there is no admission by Robinson similar to that in *Quirke*, Robinson is at least as inadequate a derivative action plaintiff as was the plaintiff in *Quirke*. *See also Nolen v. Shaw-Walker Co.*, 449 F.2d 506 (6th Cir. 1971).

Robinson cites the cases of *Sweet v. Bermingham*, 65 F.R.D. 551 (S.D.N.Y.1975), and *Mayer v. Development Corporation of America*, 396 F.Supp. 917 (D.Del.1975), in support of his position that he is not an inadequate plaintiff. However, in both of those cases a major portion of the Courts' rationale in so ruling was based on the fact that Rule 23.1 requires the Court to oversee and ratify any proposed settlement. Theoretically, the District Courts in these two cases may be correct. However, as a practical matter, this reasoning is illusory, as pointed out by the First Circuit in the *G. A. Enterprises* case. Said the Court in rejecting such an argument:

> It is true that the suit could not be settled without court approval. However, a court's ability to oversee complex litigation and understand all its nuances is limited by its many other duties. In an adversary system a court must rely largely on the parties. Rule 23.1 recognizes the binding effect of derivative litigation on all stockholders and the company, and accordingly forbids maintenance of such a suit by plaintiffs unable to provide fair and adequate representation.

517 F.2d at 27. The First Circuit was merely recognizing the realities of today's docket, realities with which this Court is extremely familiar, in concluding, in effect, that the oversight function provided for in Rule 23.1 must be exercised *in conjunction with* the adequacy requirement in order for the oversight function to be meaningful. This is a much more pragmatic approach than that of the *Sweet* and *Mayer* Courts, and this Court chooses to follow the *G. A. Enterprises* approach. In view of Robinson's clearly inadequate status as a representative plaintiff, this Court cannot permit him to maintain the action as a derivative action, despite its power to exercise the oversight function.

Finally, Robinson cites the case of *Jannes v. Micro Wave Communications, Inc.*, 57 F.R.D. 18 (N.D.Ill.1972), wherein the Court held that the derivative action plaintiff's representation was adequate, despite potential conflicts, because of plaintiff's "forceful prosecution" of the derivative action. However, the question of forceful prosecution is only one prong of the test; where there are overwhelming actual and real conflicting personal interests on the part of the derivative plaintiff, his representation is not adequate, whether his prosecution is forceful or not, for the simple reason that the forcefulness of prosecution is likely to be directed toward enhancement of his personal claims and defenses, rather than for the benefit of the shareholders or the corporation, 66 F.R.D. at 125 and 517 F.2d at 26.

For all the above reasons, the defendants' Motion for Partial Summary Judgment with respect to the derivative claims will be *Granted.*