Rockingham
No. 88-181

### Ansell W. Palmer & a.

v.

### U.S. Savings Bank of America & a.

February 6, 1989

*Hamblett & Kerrigan P.A.*, of Nashua (*John P. Griffith & a.* on the brief, and *Mr. Griffith* orally), for the plaintiffs.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Bruce W. Felmly* and *Wilbur A. Glahn, III*, on the brief, and *Mr. Glahn* orally), for defendant Joseph Fanaras, filed joint brief and argued orally on behalf of all defendants.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester, for defendant U.S. Savings Bank of America.

*Shaines & McEachern*, of Portsmouth, for defendant Richard K. Parker, Jr.

*Brown and Lapointe*, of Exeter, for defendants Jeffrey Breiseth, Charles Mutrie, and James N. Walsh.

*Aeschliman & Tober*, of Portsmouth, for defendants Charles Keenan, Kenneth Malcolm, and Theresa Sparks.

JOHNSON, J. The plaintiffs, Ansell W. Palmer, Frederick W. Lowell, Roberta W. Young and Thomas T. Hodge, appeal from an order of the Superior Court (*Gray*, J.) dismissing the derivative action they brought on behalf of the U.S. Savings Bank of America (the Bank). The action, which alleges breach of fiduciary duties by the defendant directors of the Bank, Joseph Fanaras, Richard K. Parker, Jr., Jeffrey Breiseth, Charles Mutrie, Kenneth Malcolm, Paul McInnis, Charles Keenan, Theresa Sparks, Frank Conte and James N. Walsh, was dismissed on the ground that the plaintiffs lack standing to bring the action because they do not fairly and adequately represent other similarly situated shareholders. For the reasons that follow, we affirm.

Because the relationships of the parties, and the acts taken by them prior to the institution of this suit, formed the basis for the trial court's determination, we review the background of this action in some detail.

The U.S. Savings Bank of America, a nominal defendant in this action, is a New Hampshire corporation with its principal place of business in Seabrook. Plaintiff Lowell, an incorporator and promoter of the Bank, which opened in June 1984, became its first president and a member of its initial board of directors. In April 1986, the majority of the board, made up of current defendants Fanaras, Mutrie, Walsh, Breiseth, and Parker, held an election of officers and voted to terminate Lowell's contract as president. In response, Lowell petitioned the superior court to enjoin the board's actions during the April meeting, claiming that the by-laws had been breached by these directors, both by causing the election to take place and by terminating his employment contract. The suit was resolved that summer, when Lowell was allowed to return to the Bank.

In October 1986, the same majority of the board of directors voted to suspend Lowell as the Bank's president, until the next meeting of the board in November. Lowell refused to leave the Bank or turn in his keys. Eventually he was ordered by the Superior Court (*Murphy*, J.) to return his keys, divulge his combination to the vault, and leave the Bank.

Also in the fall of 1986, Director Fanaras acquired a controlling interest in the Bank by purchasing the stock in the Bank owned by Central Savings Bank. On December 18, 1986, plaintiffs Hodge and Young, as well as more than twenty other shareholders, brought suit seeking, *inter alia*, to have the court find that the transfer of stock was in violation of a restrictive agreement voted on by the shareholders. They also asked the court to enjoin a December 22, 1986 special meeting of shareholders, during which a new board of directors would be elected. The plaintiffs failed to obtain a preliminary injunction, however, and on December 22, the meeting was held and a new board of directors elected. On December 29, the new board voted to terminate Lowell's employment as president. The issue of whether the stock transfer could take place was resolved by a decision dated February 16, 1988, in which the Court (*Gray*, J.) found that the transfer was not restricted.

On June 29, 1987, Lowell brought a contract action against the Bank and its directors alleging breach of contract, malicious conduct, wrongful discharge, and, as against the directors as individuals, tortious breach of contract. Lowell alleged damages of one million dollars and sought an attachment of assets. On July 5, 1988, the Court (*Gray*, J.), following a hearing, found that the board had just cause to terminate Lowell's employment. The court, however, held that because the board failed to articulate the reasons for the termination, the board had breached Lowell's contract, and that he was therefore entitled to the salary which accrued up to such time as the board properly terminated his employment, if it chose to do so. The board took this action soon after, at which time Lowell's damages were $104,272.48. In September 1988, Lowell filed an appeal with this court alleging, *inter alia*, that he was entitled to the full present value of his salary over the term of his ten-year employment contract. The Bank filed a cross-appeal, claiming that the Bank did not have to provide Lowell with specific reasons for his termination as president. Both the appeal and cross-appeal were accepted for review. The issue of the amount of damages, if any, to which Lowell is entitled is thus not settled because of the pending appeal.

On October 29, 1987, the plaintiffs filed the present derivative suit. In their complaint, the plaintiffs allege that the defendants breached their fiduciary duties as directors, officers and shareholders based on various acts or omissions. The complaint requested the court, pending a final decree, to remove the current directors and officers from their positions, and to appoint Lowell as the

receiver of the Bank's assets. The request to name Lowell as receiver was later withdrawn. On December 22, 1987, the defendants filed a motion to dismiss, alleging, *inter alia,* that the plaintiffs are not able to bring the suit because they do not fairly and adequately represent the interest of the other shareholders of the Bank. Following a hearing, the Court (*Gray,* J.) ruled on January 12, 1988, that Lowell, because of his clear conflict of interest, was not representative of the class, and granted the motion to dismiss as to the temporary relief sought by the plaintiffs. The court found:

> "[What we have is a] series of lawsuits which when viewed in context and in their numerical totality reveal attempts by two separate factions of shareholders and/or directors to gain control of the bank; not necessarily for private gain but certainly for the purpose of operating the bank in accordance with their separate management philosophy . . . . What we have here is a fight between various factions as to who will control the bank."

The court held that the other plaintiffs were "inextricably entwined" with Lowell.

In response to defendants' January 21, 1988 motion for clarification or reconsideration, the court stated that the plaintiffs are not fair and adequate representatives of the shareholders and therefore could not bring the lawsuit. The court found that although Lowell's contract action is "entirely within his rights, . . . it is also in conflict with the interests of the shareholders as a class." It held that the other plaintiffs' request to name Lowell as receiver "is indicative of the fact that the plaintiffs are not seeking to represent the interests of the shareholders, but are merely seeking to facilitate the goals of Mr. Lowell, namely, to regain control of the bank."

Following a hearing on plaintiffs' motion for reconsideration on March 18, 1988, the court on April 7, 1988, affirmed its earlier order, stating:

> "It is clear that Mr. Lowell's contract claim, while entirely within his right, places him in conflict with the interests of the shareholders in the context of a derivative suit. The contract claim creates economic antagonism dictated by Mr. Lowell's personal interests which cannot enjoy support from other shareholders since it depletes the corporation of assets. The original remedy sought by the plaintiffs; to name Lowell as receiver, further exacerbates the difference between Mr. Lowell and other shareholders.

> Plaintiffs' withdrawal of this remedy cannot change this. The Court is not ruling that proper parties' plaintiff cannot sue under a stockholder's derivative action . . . . The Court is simply ruling that, however legitimate the concerns of the present plaintiffs may be to them, they simply cannot fairly represent all of the shareholders given their other conflicting interests."

This appeal followed.

The plaintiffs argue that they have standing to bring the derivative suit based on their ownership of stock at the time of the alleged wrong. There is no dispute that the plaintiffs owned stock at the time of the alleged wrongdoing and continue to do so. At trial, it was indicated that Lowell owns at least 11% of the Bank's shares, while the other plaintiffs own approximately 5–6% combined. The plaintiffs argue that they do not have to satisfy a separate requirement of fair and adequate representation.

■ RSA 293-A:49 sets forth several provisions relating to shareholder derivative suits. RSA 293-A:49, I, states the requirement of contemporaneous ownership of stock or voting trust certificates at the time of the alleged wrong in order to bring a derivative action. RSA 293-A:49, II relates to the payment of reasonable expenses by the plaintiff under certain circumstances. RSA 293-A:49, III states when a security bond may be required. Although the statute does not expressly state that the named plaintiff in a derivative action must fairly and adequately represent the interests of other similarly situated shareholders, such a requirement should be implied, given the nature of a derivative action. *See Youngman v. Tahmoush*, 457 A.2d 376, 379 (Del. Ch. 1983); *Barrett v. Southern Connecticut Gas Co.*, 172 Conn. 362, 373, 374 A.2d 1051, 1057 (1977).

■ In a shareholder derivative suit, a nominal plaintiff, a shareholder of the corporation, asserts "a corporate cause of action against persons, either within or without the corporation, who have allegedly wronged it, where the corporation has failed to enforce such claim directly." H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS 1044–45 (3d ed. 1983). Although the Bank is nominally a defendant in this suit, it is actually the real party in interest, *see* 13 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5939 (rev. perm. ed. 1984), and any recovery accrues to the Bank. *See Rothenberg v. Security Management Co., Inc.*, 667 F.2d 958, 960 n.3 (11th Cir. 1982). The shareholder is benefited only indirectly. *See id.* The shareholder derivative suit is

thus quite different in several respects from a representative or class action where a shareholder brings an action in his own right and for his own benefit on behalf of himself and other similarly situated shareholders. *See generally* 12B W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5908 (rev. perm. ed. 1984); 13 FLETCHER, *supra* at § 5939. In a class action, it is the shareholders themselves who allege that they have been injured by the corporation's actions, and it is the shareholders themselves who recover any damages that are proven. *See Eisenberg v. Flying Tiger Line, Inc.*, 451 F.2d 267 (2d Cir. 1971) (reorganization plan which allegedly deprived shareholders of right to vote gave rise to personal, not derivative action); *see also* 13 FLETCHER, *supra* at § 5908. The theory of a shareholder derivative suit rests largely on the notion that "[i]f the duties of care and loyalty which directors owe to their corporations could be enforced only in suits by the corporation, many wrongs done by directors would never be remedied." W. CARY, CORPORATIONS 726 (4th ed. 1970). This is simply because the directors of a corporation, who have injured the corporation by their actions, could hardly be expected to authorize the corporation to bring suit against themselves to redress the wrong.

■■ In order to give a judgment rendered in a derivative action res judicata effect, we impose a requirement of fair and adequate representation on the named plaintiffs. *See Barrett*, 172 Conn. at 371, 374 A.2d at 1056; 13 FLETCHER, *supra* at § 5981.1. This spectre of res judicata, by which a decision is binding on all the shareholders, makes the named plaintiff in a shareholder derivative suit similar to a representative in a class action, *see Barrett*, 172 Conn. at 371, 374 A.2d at 1056, who must, under the rules of the superior court, provide fair and adequate representation. SUPER. CT. R. 27-A(a)(4). However, we will not require a plaintiff in a derivative suit to make a separate showing of fair and adequate representation. As a shareholder of record at the time of the alleged wrong, such a plaintiff has demonstrated *prima facie* his ability to represent other similarly situated shareholders. The burden is on the defendant or on other interested shareholders to establish that a particular plaintiff or plaintiffs cannot provide fair and adequate representation for other similarly situated shareholders. *See Shamrock Associates v. Horizon Corp.*, 632 F. Supp. 566, 571 (S.D.N.Y. 1986) (defendants failed to meet their burden of establishing inadequate representation); *Baron v. Strawbridge & Clothier*, 646 F. Supp. 690, 695 (E.D. Pa. 1986) (burden on defendants to obtain a finding of inadequate representation).

■ When the fairness and adequacy of representation by the named plaintiff is challenged, however, *see Barrett*, 172 Conn. at 370, 374 A.2d at 1056 (defendants in derivative action may properly question whether plaintiff has standing to act as nominal shareholder acting on behalf of the corporation), the court must look at the facts of the particular case to determine whether the named plaintiff lacks adequate counsel or "vigor with which . . . [to] prosecute the corporate claim," *see Shamrock Associates*, 632 F. Supp. at 570, or whether he has "outside entanglements making it likely that the interests of the other shareholders will be disregarded in the management of the suit." *See G.A. Enterprises, Inc. v. Leisure Living Commun., Inc.*, 517 F.2d 24, 27 (1st Cir. 1975); *see also Rothenberg v. Security Management Co., Inc.*, 667 F.2d at 961; *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir. 1981); *Blum v. Morgan Guaranty Trust Co. of New York*, 539 F.2d 1388, 1390 (5th Cir. 1976); *Barrett*, 172 Conn. at 374, 374 A.2d at 1057.

■ The plaintiffs argue that the court erred in holding that they do not fairly and adequately represent the other similarly situated shareholders. With regard to Lowell, the plaintiffs specifically argue that Lowell's position as a judgment creditor, with regard to his claim in the contract action, does not make him *per se* an inadequate representative in the derivative suit. We agree with the plaintiffs that being a creditor does not *per se* disqualify someone from having standing to bring a shareholder derivative suit. *See Owen, supra* at 443. There may be situations, for example, where a debt is uncontested, where a shareholder's interest as a creditor does not place him at odds with the interests of the other shareholders. In the instant case, however, the court did not base its finding regarding Lowell on his status as a judgment creditor. Its determination was based on a number of facts present in the instant case.

The court found that Lowell's contract action against the Bank, currently on appeal, created an "economic antagonism" between Lowell and the other shareholders. Lowell's interest in collecting his claim of $1 million from the Bank is certainly contrary to the interest of the other shareholders, who would not desire the depletion of corporate assets. *See Robinson v. Computer Servicenters, Inc.*, 75 F.R.D. 637, 641–42 (N.D. Ala. 1976); *Barrett*, 172 Conn. at 374, 374 A.2d at 1057; *see also Roberts v. Alabama Power Co.*, 404 So.2d 629, 637 (Ala. 1981). The conflict created by these diverse interests was shown to be very real, "not purely hypothetical, potential or remote," *see G.A. Enterprises*, 517 F.2d at 27, when

Lowell, in the complaint bringing the derivative suit, which marked his first act as a representative plaintiff, requested the court to appoint him as receiver of the Bank's assets. As a receiver, he would be in a position potentially advantageous to his personal contract action, as well as his goal, as found by the court, of gaining control of the Bank. It would also put him in a position in conflict with the interest of the other shareholders, who would most likely not want a person with a large personal action against the Bank to be appointed receiver, particularly where the personal action was subject to appeal and potentially could be settled prior to any decision on the appeal. The court found a conflict regardless of whether Lowell consciously intended to use the position of receiver for his personal advantage.

A number of courts have held that plaintiffs who had large personal suits against the company which they purported to represent were not adequate representatives because of the likelihood that they would use the derivative suit as leverage in settling the personal suit. *See Davis v. Comed, Inc.,* 619 F.2d 588, 594, 597 (6th Cir. 1980); *G.A. Enterprises,* 517 F.2d at 26. Courts have most often come to this conclusion when the derivative claim paled in comparison with the outside interest. *See Rothenberg,* 667 F.2d at 960; *Davis,* 619 F.2d at 594; *Blum,* 539 F.2d at 1390; *G.A. Enterprises,* 517 F.2d at 26; *see also Owen,* 643 F.2d at 444. In the instant case, the court did not expressly indicate concern that the derivative suit might be used as leverage to settle Lowell's personal contract claim; rather, its concern was with Lowell's potential use of the suit, consciously or unconsciously, to advance his paramount interest in gaining control of the Bank. Given the history of the relationship between the parties evidenced in part by other actions which were intended to serve that goal, the court could have found it likely that this "suit [was] an attempt to open still another front in a wide ranging battle having objectives unrelated to those shared" by the other shareholders. *Barrett,* 172 Conn. at 377, 374 A.2d at 1058 (quoting *duPont v. Wyly,* 61 F.R.D. 615, 622 (D. Del. 1973)). We therefore hold that the court committed no error in holding that Lowell lacked standing to bring the derivative action. *See Hornreich v. Plant Industries, Inc.,* 535 F.2d 550 (9th Cir. 1976); *G.A. Enterprises,* 517 F.2d 24.

The court found that Palmer, Hodge and Young lack standing to bring the suit because they are "inextricably entwined" with Lowell. The other plaintiffs' entanglement with Lowell was evidenced by their continued representation in the action by Lowell's counsel, who had represented Lowell and currently

represent him in the contract action, even after the court had found Lowell to have a conflict of interest. *See Nolen v. Shaw-Walker Company*, 449 F.2d 506, 509 (6th Cir. 1971) (finding that third party was controlling litigation supported by fact that named plaintiff followed third party's lead in selection of counsel). The plaintiffs' joining in Lowell's request to have Lowell appointed as the receiver of the Bank's assets is also revealing. At the January 8, 1988 hearing on the defendants' motion to dismiss, the plaintiffs, in response to the court's skepticism as to whether Lowell would be an appropriate receiver, responded that they "don't have any problem with someone else being appointed receiver." This willingness to allow the appointment of someone other than Lowell does not negate what the earlier request reveals about the other plaintiffs' ties to Lowell. The other plaintiffs have indicated that they do not intend to investigate the Bank's affairs prior to October 1986. We note that Lowell was suspended as Bank president in October of 1986 and clearly never regained control of the Bank's affairs after that date.

■■ In determining whether a plaintiff can fairly and adequately represent other shareholders, it is appropriate to look at "indications that the named plaintiff [is] not the driving force behind the litigation. . . ." *See Davis*, 619 F.2d at 593–94; *see also Nolen*, 449 F.2d at 508–10. The above facts support a finding that Lowell, and not the other plaintiffs, was indeed the driving force. We therefore cannot rule that the court abused its discretion when it held that Palmer, Hodge and Young lack standing to bring the derivative suit.

■ The plaintiffs make two final arguments. First, they claim that the defendants' motion to dismiss the action for lack of standing should have been granted only if there was *no evidence* showing that the plaintiffs could act in the best interest of the other similarly situated shareholders. They argue that on a motion to dismiss, a court must assume that all of the opposing party's well pled allegations of fact and reasonable inferences to be drawn therefrom are true and can be proved. Although the plaintiffs have stated the correct standard to be utilized by a court in determining whether to grant a motion to dismiss for failure to state a claim upon which relief may be granted, R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 353, at 247 (1984), in determining whether to grant a motion to dismiss for lack of standing, a court must look at all the relevant facts to determine whether the plaintiffs will fairly and adequately

represent other similarly situated shareholders. *See Rothenberg*, 667 F.2d at 961; *Hornreich*, 535 F.2d at 552. Presentation of *some* evidence that a plaintiff can fairly and adequately represent the other similarly situated shareholders does not require a finding of fair representation.

Second, the plaintiffs claim that the court erred in failing to consider the transcript of a meeting between the Bank's board of directors and the State and federal banking regulators, which the plaintiffs allege supports their claim of mismanagement, in making its determination regarding standing. We agree with the court below that the question of whether there is a valid claim on which to base a derivative action is irrelevant to the question of whether the named plaintiffs can serve as fair and adequate representatives. "[A]ny degree of wrongdoing by the defendants will not give [these plaintiffs] the standing" they otherwise lack. *Barrett*, 172 Conn. at 379, 374 A.2d at 1059 (citing *Bangor Punta Operations v. Bangor & A. R. Co.*, 417 U.S. 703, 717 n.14 (1974)). Our affirmance of the superior court's dismissal of the suit is not intended to prevent appropriate plaintiffs from bringing such a suit on behalf of the Bank.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.