TYCO LABORATORIES, INC. and AMBG Corp. derivatively on behalf of and for the benefit of Leeds & Northrup Company

v.

David T. KIMBALL, Jr., Stephen Loidl, Jr., Ogden C. Johnson, John F. Lubin, Richard L. Petritz, John R. Selby, James Skinner, Cutler-Hammer, Inc., and Leeds & Northrup Company.

Civ. A. No. 77–853.

United States District Court,
E. D. Pennsylvania.

Oct. 12, 1977.

Gregory M. Harvey, Philadelphia, Pa., for plaintiffs.

Arlen Specter, Richard S. Seltzer, Robert C. Heim, Philadelphia, Pa., for Kimball, Loidl and Leeds & Northrup.

Peter Hearn, Philadelphia, Pa., for Johnson, Lubin, Petritz, Selby & Skinner.

Edith G. Laver, Lawrence Z. Shiekman, Philadelphia, Pa., Jan E. DuBois, Philadelphia, Pa., for Cutler-Hammer, Inc.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The present motions presented by the defendants request dismissal of plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. Plaintiffs, in this derivative action on behalf of Leeds & Northrup Company (Leeds), filed an amended complaint alleging that the defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 15 C.F.R. 240.10b–5, Sections 401 and 501 of the Pennsylvania Securities Act of 1972, P.L. 1280, 70 P.S. §§ 1–401 and 1–501, and the Pennsylvania Business Corporation Law, as amended, 1968 P.L. 459, especially 15 P.S. § 1409.1. As to defendants Johnson, Lubin, Petritz, Selby and Skinner their motions to dismiss the federal claims against them will be granted. The other motions to dismiss will be denied.

## FACTUAL BACKGROUND

The plaintiffs, who are bringing this suit on behalf of Leeds, are two Massachusetts corporations owning stock in Leeds; plaintiff AMBG is a wholly owned subsidiary of plaintiff Tyco Laboratories. Leeds, a named defendant in this suit, is a Pennsylvania corporation whose common stock, which is registered pursuant to Section 12(b) of the Exchange Act, 15 U.S.C. § 78l (b), is listed on the New York Stock Exchange. Defendants Kimball, Loidl, Johnson, Lubin, Petritz, Selby and Skinner are directors of Leeds and held such positions at the time material to the matters raised in this complaint. All of these defendants are citizens of states other than Massachusetts. It should be noted that defendant Kimball is President and Chief Executive Officer of Leeds and defendant Loidl is Leeds' Vice President for Finance and Treasurer. Defendant Cutler-Hammer, Inc., is a Delaware corporation with its principal place of business in Wisconsin.

The basic factual picture painted by the plaintiffs' complaint is as follows. Defendants Kimball and Loidl conspired to and did cause Leeds to sell shares of its preferred stock to Cutler-Hammer for an amount that was less than the plaintiffs would have been willing to pay for these shares and that was less than its fair market value. These defendants engaged in this transaction knowing that the plaintiffs were willing and able to purchase these shares for a greater consideration than Leeds received from Cutler-Hammer and that the reason for making the sale to Cutler-Hammer was to maintain the control of these defendants over Leeds. Apparently, Loidl and Kimball feared losing control of Leeds due to the fact that prior to the sale to Cutler-Hammer plaintiffs purchased a substantial amount of Leeds' stock and these defendants feared that the plaintiffs would mount a takeover effort and usurp Kimball's and Loidl's control in the corporation. In fact, after the plaintiffs obtained 13% of Leeds' outstanding common stock, the defendant directors caused Leeds to institute a suit in this court against the plaintiffs seeking to enjoin them from making further purchases of Leeds' stock and to require them to return those shares already purchased. That suit was resolved pursuant to a settlement agreement, whereby the plaintiffs, inter alia, agreed not to make further purchases of Leeds' stock except through the tender offer procedures prescribed under the federal statutes and regulations. On the day that the settlement agreement was executed, but prior to its execution, the Leeds' Board of Directors authorized the sale to Cutler-Hammer; this sale did not have to be approved by Leeds' shareholders. The quid pro quo for allowing Cutler-Hammer to purchase Leeds' shares at a discounted price was Cutler-Hammer's implicit agreement that it would not act in a manner contrary to the wishes of Kimball and Loidl. Thus, the sale to Cutler-Hammer, though at less than the price that could have been obtained if Leeds had sold the shares to the plaintiffs, insured Loidl and

Kimball continuity in their control over the corporation. Plaintiffs also allege that upon learning about the sale to Cutler-Hammer, they offered to purchase the same shares for a greater price but their offer was refused by Leeds' Board of Directors. Besides Loidl and Kimball, plaintiffs claim that the other director defendants either conspired with or acquiesced in all or some of the above events.

In connection with this securities transaction, plaintiffs allege that defendants Kimball and Loidl failed to disclose to the other defendant directors, Leeds as a corporate entity and to the stockholders of Leeds, or in the alternative, all the defendant directors failed to disclose to Leeds as a corporate entity and to the stockholders of Leeds the known willingness of plaintiffs to purchase a substantial number of shares of Leeds' stock at a price which was materially higher than the price actually paid by Cutler-Hammer for the preferred shares and the fact that the shares were being sold for this lesser price as a tactic to maintain Kimball and Loidl as the incumbent management of Leeds. The plaintiffs also claim that defendants Kimball and Loidl made certain affirmative misstatements of fact to the other directors, Leeds as a corporate entity, and to the shareholders of Leeds, or in the alternative, all the defendant directors made to Leeds as a corporate entity and to the shareholders of Leeds certain affirmative misstatements of fact including the affirmative misstatements that the transaction was to fulfill a need to raise equity capital to reduce domestic bank loans.

## STANDARD FOR DETERMINING WHETHER TO GRANT THE MOTION TO DISMISS

The Supreme Court has instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 at 45, 78 S.Ct. 99 at 102, 2 L.Ed.2d 80 (1957). In actions under the federal securities laws the courts are especially cautious in granting motions for dismissal, judgments on the pleadings and summary judgments. *Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir., 1968); *Miller v. Bargain City U.S.A., Inc.*, 229 F.Supp. 33 (E.D.Pa.1964). The judicial reluctance to grant these pretrial motions arises from the recognition that discovery is often necessary for the shareholder to obtain the specific facts from insiders in the corporation required to fully develop its claim. Therefore, this Court, if it is to dismiss plaintiffs' claims, must be certain that there are no set of facts that the plaintiffs can prove to support a legally sufficient claim and when making this determination must accept the allegations of the plaintiffs' complaint as true and view them "liberally, giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, at 444 (3d Cir., 1977).

## PLAINTIFFS' FEDERAL CLAIMS

Plaintiffs claim that the acts of the defendants in selling preferred shares of Leeds' corporation to defendant Cutler-Hammer for less than its market value and less than the plaintiffs would have paid for such shares and the making of material misrepresentations and non-disclosures in connection with this transaction constituted an unlawful device, scheme and artifice to defraud and were acts, practices and courses of business which operated as a fraud and deceit upon Leeds and its shareholders all of which violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. Defendants assert that under the recent Supreme Court decision in *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), plaintiffs fail to state a claim upon which relief can be granted.

This Court only accepts the defendants' argument in part. In *Sante Fe Industries v. Green*, the Supreme Court held that allegations that the defendants breached their fiduciary due to the corporation, alone,

would not state a cause of action under Section 10(b). The Supreme Court found that Section 10(b) requires that the course of conduct that the defendant is alleged to have engaged in must involve manipulation or deception. Deception can be practiced by the making of misrepresentations or nondisclosures of material facts. In the case presently before this Court, the plaintiffs allege that there were misrepresentations and nondisclosures of material information made by the defendants.

While the defendants admit that the plaintiffs allege that misrepresentations were made, the defendants claim that the necessary causal connection between these misstatements and the securities transaction involved was lacking to state a cause of action under Section 10(b). Defendants assert that the plaintiffs fail to claim that these misrepresentations led Leeds to enter the securities transaction with Cutler-Hammer; the defendants' position is that for the purposes of these securities transactions, Leeds' corporate entity was represented by its Board of Directors as it authorized the sale to Cutler-Hammer and since the plaintiffs claim that the directors possessed the correct information when they approved the sale, the directors, and therefore the corporation, were not deceived. While it may be true that all the directors of Leeds knew the true purpose behind the sale to Cutler-Hammer and that Leeds would receive less consideration for its shares than if it sold them to the plaintiffs, this is not what the plaintiffs allege. In their amended complaint, the plaintiffs claim that either Kimball and Loidl misrepresented and withheld the true facts from the other directors or that, in the alternative, all the directors withheld the true information from the corporation and its shareholders. If the Court accepts the veracity of the first allegation, which it is required to do when ruling upon a motion to dismiss, then clearly the plaintiffs have alleged that those in the position to authorize the transaction were deceived and have stated a cause of action under the *Green* decision.

Of course, this Court recognizes the apparent inconsistency in the plaintiffs' amended complaint in that the other directors who are alleged to have been deceived by Loidl's and Kimball's misrepresentations and nondisclosures of fact are joined as defendants in this action. The plaintiffs allege that these directors conspired with Kimball and Loidl to defraud the corporation. It is not, therefore, unreasonable to question the logic of the plaintiffs' claim that the defrauders were somehow deceived by Kimball and Loidl and that this constitutes a securities violation. However, plaintiffs' allegations concerning these other directors' participation in the conspiracy to defraud are unclear. While in paragraph 20 of the plaintiffs' amended complaint, it is asserted that these other directors entered into the conspiracy with Kimball and Loidl to defraud the corporation, the plaintiffs fail to state in that paragraph when these directors agreed to the plan to defraud Leeds. And it is not until paragraph 42 of the amended complaint that the plaintiffs allege when these directors entered in the conspiracy and in that paragraph the plaintiffs assert that by voting to reject the plaintiffs' offer to purchase the preferred stock for more than Cutler-Hammer paid to Leeds for the same, these other director defendants defrauded the corporation. The vote to reject the plaintiffs' offer occurred two months after the Leeds' Board approved the sale to Cutler-Hammer; if this was when the directors commenced participation in the scheme to defraud Leeds, then it could be said that while these directors may have defrauded Leeds, they were deceived into authorizing the sale to Cutler-Hammer two months earlier. Therefore, this Court finds that the plaintiffs have alleged a possible set of facts which support a cause of action under Section 10(b) of the Securities Exchange Act of 1934.

◼ Given the above theory for finding that plaintiffs have stated a Section 10(b) cause of action, it must be asked whether the plaintiffs have alleged sufficient facts to withstand a motion to dismiss against the defendant directors Johnson, Lubin, Pe-

tritz, Selby and Skinner. Plaintiffs' federal claims against these defendants are based on two alternative theories. Plaintiffs contend that either these directors were deceived into authorizing the sale to Cutler-Hammer and their first participation in the conspiracy to defraud Leeds was when they rejected the plaintiff's offer to purchase the preferred shares two months after the sale to Cutler-Hammer, *or* that these defendants, in addition to Kimball and Loidl, knew of the correct information behind the sale to Cutler-Hammer, misrepresented and failed to disclose the true facts to Leeds and its shareholders and therefore deceived the corporation and its shareholders when they voted to authorize the sale to Cutler-Hammer. Under either theory, plaintiffs fail to state a Section 10(b) cause of action. The first theory, if proved, would require this Court to find that these defendants, when they rejected the plaintiffs' offer to purchase the preferred shares, were fully informed of the true facts behind the transaction and were not deceived when they participated in the conspiracy to defraud the corporation. Similarly, under the second theory, this Court, if plaintiffs establish their case, would determine that the defendants authorized the sale to Cutler-Hammer with full knowledge of the facts behind the transaction and therefore were not deceived. Thus, the only way this Court could under either theory of plaintiffs' case make a finding of the requisite deception that is necessary in a Section 10(b) case, as required by *Green*, would be to hold that even though those persons authorizing the sale or rejecting the offer to purchase were not deceived, somehow the corporation or its shareholders were deceived by these directors.

Generally, when the Courts are asked to determine whether there has been a deception in connection with a securities transaction under Section 10(b), they look to see whether the body authorizing the sale or purchase of the securities has been deceived. In this case, the Court would be required to determine whether or not the directors were deceived. However, plaintiffs argue that when the directors are authorizing the transaction to maintain their own personal control and dominance of the corporation, this Court must substitute the corporation, as represented by its shareholders, for the directors to determine whether a deception has been practiced. This Court rejects the plaintiffs' argument. Although there are cases decided prior to and after *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), which hold that when interested directors authorize a transaction that does not need shareholder approval, the deception determination under Section 10(b) is made by determining whether the corporation as represented by its shareholders, rather than by its Board of Directors, was deceived, *see Goldberg v. Meridor*, 567 F.2d 209 (2d Cir., 1977); *Pappas v. Moss*, 393 F.2d 865 (2nd Cir., 1968), these cases involve instances when the directors had a pecuniary involvement with the transaction that was to be approved by the Board. In this case, such allegations of financial interest by the directors of Leeds are absent. Here the only allegation of director interest is that the directors wished to retain their control over Leeds, and this Court believes that this fact distinguishes the cited cases from the case before the Court.

After *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), it is questionable whether a Section 10(b) cause of action is stated when the directors of the corporation, in order to enhance their *financial position*, take actions to cause the corporation to enter an unfair or unfavorable transaction and fail to disclose or misstate the purpose behind the transaction. In footnote 15 of the Supreme Court's opinion in *Green*, the Court distinguished such cases from the one that it was presently deciding, but it did not lend its approval to those cases. Since the decision in *Green*, the courts confronted with this question have split in their opinion as to whether *Green* foreclosed such actions. *See Goldberg v. Meridor*, 567 F.2d 209 (2nd Cir., 1977) [where a corporation's board of directors is influenced by the controlling shareholder's pecuniary interest to engage

in a transaction adverse to the corporation's financial interest and there is non-disclosure or misleading disclosure as to the material facts of the transaction, a cause of action is stated under Section 10(b)]; *contra Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir., 1977) [it is clear since *Santa Fe Industries v. Green*, that violation of any state law fiduciary duties, including non-disclosure of conflicts of interests or unfairness of conversion price, will not support a claim of constructive fraud under the securities acts.] This Court is not called upon to take a side in this conflict between the circuits. Rather, the Court must decide whether a cause of action is stated when there is no allegation of pecuniary interest on the part of the directors in the transaction and it is only alleged that the directors acted to retain their control of the corporation and that interest caused them to breach their fiduciary duties. Thus, this Court is required to decide whether the directors' interest in retaining control allows for the corporation, as represented by its shareholders, to be substituted for the board of directors, in the formula for determining whether there has been a deception under Section 10(b).

This Court finds that the directors' interest in retaining control is not a sufficient interest to permit this Court to change the formula. The same issue arose recently in *Falkenberg v. Baldwin*, CCH Fed.Sec.L. Rep., ¶ 96,086 (S.D.N.Y. June 13, 1977). There the court found that while it may be true that in some instances the directors' conflicts of interest permits a modification in the calculus, the court must still restrict its inquiry to whether the corporation, as represented by the directors and not the shareholders, was deceived in entering a securities transaction when the only interest alleged on the part of the directors was their desire to remain in control. The *Falkenberg* court reached this result because it found that as the control interest may be attributed universally to directors and officers of corporations, to decide otherwise would allow a wide variety of claims for breach of fiduciary duty to be brought un-

der Section 10(b). This Court finds the reasoning in *Falkenberg* to be sound and consistent with the Supreme Court's instructions in *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). The Supreme Court in Part IV of the *Green* opinion indicated its disapproval of the federal courts assuming jurisdiction in securities cases based on breaches of fiduciary duties when there were ample state law remedies available. In cases where the directors, allegedly in violation of their fiduciary duties, have authorized securities transactions it can always be claimed that the directors did so to maintain their control over the corporation and failed to disclose the same thereby making a material nondisclosure of information. If such allegations stated a securities claim it would permit the federal courts to resolve those fiduciary duty cases which the Supreme Court has instructed should be left to the state courts. Thus, in order not to violate the mandate of the *Green* decision, this Court will grant the motions to dismiss the federal claims as to defendants Johnson, Lubin, Petritz, Selby and Skinner.

## PLAINTIFFS' STATE LAW CLAIMS

■ Plaintiffs proceeding on diversity jurisdiction also raise in their amended complaint two state law claims. Defendants have asked for a dismissal of these claims on two grounds. First, defendants assert that the plaintiffs, in this derivative action, are not adequate representatives of the interests of Leeds' shareholders under Rule 23.1 of the Federal Rules of Civil Procedure. Rule 23.1 provides that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." However, this Court finds that the plaintiffs do adequately represent the interests of the shareholders. Although plaintiffs may own a substantial interest in Leeds and may have once been placed in an adversary position to the defendants in this action, this Court does not

find that these facts disqualify the plaintiffs from representing the Leeds' shareholders in a derivative action. As the court said in *G. A. Enterprises, Inc. v. Leisure Living*, 517 F.2d 24 (1st Cir., 1975),

> A plaintiff is not disqualified under Rule 23.1 merely because of the existence of interests beyond those of the class he seeks to represent, so long as he shares a common interest in the subject matter of the suit. And purely hypothetical, potential or remote conflicts of interest do not disable him . . . Thus, it is sometimes said that the antagonism of interests "must go to the subject matter of the suit"—meaning that antagonism irrelevant to the proceeding may be disregarded.

In this case, the plaintiffs share with the other shareholders the common interest of seeking redress from the defendants for breaches of fiduciary duties or other violations of the federal or state securities and business corporations laws. Any recovery that results from this action will inure to the corporation, and not to these plaintiffs in their individual capacities. The possibility that the plaintiffs will enter a settlement beneficial to themselves and not to the corporation is one that exists in all derivative actions and one which there are safeguards provided for to minimize this abuse of the derivative action. Rule 23.1 specifically requires the court to approve proposed settlements and scrutinize them for showings of improper compromises. *Mayer v. Development Corporation of America*, 396 F.Supp. 917 (D.Del.1976). Thus, this Court finds that the shareholders and the plaintiffs share sufficient interests so that the plaintiffs will fairly represent Leeds' shareholders and furthermore, that any possibility for compromise disadvantageous to Leeds' corporation and its shareholders adequately can be protected against through the protective measures incorporated in Rule 23.1.

█ The second reason given by defendants in support of their motion to dismiss is that they claim that the plaintiffs have waived bringing this action by entering into a settlement agreement. Having reviewed this settlement agreement, the Court finds nothing in the agreement which precludes the plaintiffs, as shareholders, from bringing a derivative action on behalf of and for the benefit of the corporation. Although the settlement agreement in paragraph 8 states that "nothing in this Agreement and Stipulation shall in any way preclude [Leeds] from issuing or selling any securities . . .", under no conceivable construction of that agreement could this language be read as a covenant by the plaintiffs not to sue Leeds and its directors if the issuance or sale of securities by Leeds constituted a violation either of the federal securities or state securities and business corporation laws. Nor have the plaintiffs waived their right to bring this derivative action because they offered to purchase the preferred stock that Leeds sold to Cutler-Hammer. Plaintiffs bring this action on behalf of all the shareholders of Leeds, and the offer to purchase the securities, although perhaps in contravention of the settlement agreement which provided that the plaintiffs would not offer to purchase Leeds' securities unless they did so pursuant to the tender offer procedures prescribed in the federal securities laws, was submitted after the alleged violations of the federal and state laws occurred and is no way relevant to this action. Thus, this Court finds that there is no reason to dismiss the state law actions brought by the plaintiffs and therefore defendants' motions to dismiss these claims will be denied.