Edgar STROMFELD and Sol Zisook, Plaintiffs,

v.

The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., et al., Defendants.

79 Civ. 3476 (HFW).

United States District Court, S. D. New York.

July 18, 1980.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Schwartzberg, Barnett & Cohen, Chicago, Ill., for plaintiffs; Ira B. Rose, Michael Dore, Ronald J. Levine, New York City and Hugh J. Schwartzberg, Chicago, Ill., of counsel.

Cravath, Swaine & Moore, Cahill Gordon & Reindel, Whitman & Ransom, Barrett Smith Schapiro Simon & Armstrong and Windels, Marx, Davies & Ives, New York City, for defendants; Samuel C. Butler, Robert D. Joffe, Jeffrey S. Facter, Jeanne Edna Thelwell, Peter J. Ferrara, Thomas F. Curnin, Robert C. Meade, P. M. O'Connor, Jr., Michael S. Press, Warren H. Colodner, Morton E. Grosz, Joel M. Gross, J. Daniel Mahoney and Barbara J. Schmidt, New York City, of counsel.

WERKER, District Judge.

The original complaint in this securities action was dismissed on February 21, 1980 for failure to state a claim upon which relief could be granted and for failure to plead fraud with sufficient particularity. *Stromfeld v. Great Atlantic & Pacific Tea Co.*, 484 F.Supp. 1264 (S.D.N.Y. 1980). The dismissal was without prejudice, and the plaintiffs were granted leave to file an amended complaint. The plaintiffs did so on March 24, 1980, and thereafter the defendants filed the instant motion to dismiss the amended complaint pursuant to Fed.R. Civ.P. 12(b)(6) and 9(b) for failure to state a

claim upon which relief can be granted and for failure to plead fraud with sufficient particularity.

The facts are summarized in the Court's prior opinion, and familiarity with that opinion will be assumed. The amended complaint adds the following: (1) a list of 24 documents filed with the SEC from January 16, 1979 through February 22, 1980 upon which the plaintiffs base their allegations concerning the "public acts and transactions of the defendants," amended complaint, at 2; (2) the various defendants are designated with respect to each claim as either "primary defendants" or "aiders and abettors," *id.* at 4–5; (3) an allegation that the failure of defendants to disclose the formation of the selling group caused plaintiffs and other stockholders to trade in A&P stock when they otherwise would not have and at prices that would have been different had there been such disclosure, *id.* at ¶ 59; (4) allegations that defendants Scott, Morrow, and Feder and one Edward J. Tonner caused the A&P to permit the Tengelmann defendants to gain access to inside information, which included "confidential business data," *id.* at ¶ 63; (5) allegations that defendant TN Delaware acquired over 1,000,000 additional shares of A&P common stock in numerous open market transactions, *id.* at ¶ 52; (6) allegations of irreparable harm and inadequacy of legal remedies, *id.* at ¶¶ 89, 90; (7) the date on and price at which Stromfeld purchased his A&P stock, *id.* at ¶ 5; (8) the date on and price at which Zisook purchased and sold his A&P stock, *id.* at ¶ 6; (9) statements setting forth the bases for plaintiffs' information and belief as to certain allegations, *id.* at 3; and (10) allegations in support of the claim that the defendants engaged in a tender offer, *id.* at ¶¶ 73–74.

The amended complaint sets forth three federal causes of action. The first charges defendants with forming and concealing or failing to disclose a secret selling group in violation of sections 13, 18 and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m, 78r and 78j(b), and the rules and regulations promulgated thereunder. The second cause of action alleges the illegal use of undisclosed inside information in violation of section 10(b) and the rules and regulations promulgated thereunder. The third claim accuses defendants of engaging in an illegal tender offer in violation of section 14 of the 1934 Act, 15 U.S.C. § 78n, and the rules and regulations promulgated thereunder. Additionally, the amended complaint sets forth claims for common law fraud, interference with business, and breach of fiduciary duty.

## DISCUSSION

### A. *The First Cause of Action*

The first claim accuses the defendants of formulating a selling group of shareholders without public disclosure and without the public filings required by section 13(d) and 17 C.F.R. § 240.13d–1 *et seq.* The complaint alleges in essence that had the plaintiff Zisook[1] and other shareholders been aware of the assembling of a selling group and the imminent shift in control of A&P, they would not have sold their stock when they did nor would they have sold their stock at the prices they did.

I held in my prior opinion that plaintiffs had failed to state a cause of action for alleged violations of section 13(d) whether such a claim was asserted under section 13(d) directly or under sections 18(a) or 10(b). 484 F.Supp. at 1268–71. Plaintiffs have not alleged anything in the amended complaint that would cause me to alter that conclusion. In light of the failure of section 13 to expressly confer a private cause of action for damages, and in view of the remedies available explicitly under section 18(a) and implicitly under section 10(b), the plaintiffs herein have no independent cause of action under section 13 for violations thereof. *See, e. g., Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. 213 (S.D.N.Y. 1975), *aff'd without opinion,* 538 F.2d 312 (2d Cir. 1976) (section 13(d)); *In re Penn Central Securities Litigation,* 494 F.2d 528, 539–41 (3d Cir. 1974) (section 13(a));

---

1. The first claim is asserted only on behalf of Zisook and the purported class.

*Rosengarten v. International Telephone & Telegraph Corp.*, 466 F.Supp. 817, 827 (S.D. N.Y. 1979) (section 13(a)); *Nemo v. Allen*, 466 F.Supp. 192, 195–96 (S.D.N.Y. 1979) (section 13(a)). *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (no implied cause of action for violations of reporting requirements of section 17(a) of 1934 Act).[2] In addition, section 18(a) by its terms applies to situations where a plaintiff relies on false or misleading statements contained in SEC filings. 15 U.S.C. § 78r(a). Where, as here, a plaintiff seeks relief for a defendant's failure to file, section 18(a) is not properly invoked. Even assuming a cause of action exists under section 18(a) for the failure to file section 13(d) statements, it is clear the amended complaint does not allege facts that would support a cause of action under section 18(a). Similarly, the amended complaint fails to state a claim under section 10(b).

Section 13(d) requires any person or group of persons who directly or indirectly acquires beneficial ownership of enough stock in a corporation to have more than a five per cent interest to file certain reports with the SEC and the issue of the security within 10 days after the "acquisition." Section 13(d) and the word "acquisition" as used therein have been construed to require a filing within 10 days after the "formation" of a group of stockholders together holding more than a five per cent interest. *See GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

According to the amended complaint itself, Zisook purchased his 200 shares of A&P common stock at $5.625 per share on December 15, 1978 and sold 100 of these shares of February 13, 1979 for $7.00 per share and the remaining 100 shares for $6.625 on March 21, 1979. The complaint does not allege the date on which the alleged selling group was formed, but states merely that "[a]t a date and place presently

unknown to plaintiffs but prior to January 16, 1979," amended complaint, at ¶ 46, a meeting was arranged between the Tengelmann defendants and the defendant Hartford Foundation. The complaint further alleges that on January 16, 1979, the defendants entered into seven agreements whereby TN Delaware acquired the shares and options to purchase additional shares of A&P stock, and that the defendants filed a number of Schedule 13D's on January 18 and 19, 1979.

The amended complaint fails to state a claim upon which relief can be granted for several reasons. First, it alleges that the defendants filed Schedule 13D's on January 18 and 19, 1979; but since it does not plead the date on which the group was purportedly formed, it does not allege that these statements were not filed until more than 10 days after the alleged formation of the selling group. Second, although the complaint alleges that the defendants' failure to disclose the formation of the group "caused the plaintiffs and other shareholders of [A&P] to engage in purchases and sales of the stock of [A&P] which they would not otherwise have made and resulted in these transactions being made at prices which would not have been in effect had disclosure of this information been made," amended complaint, at ¶ 59, the facts alleged do not support this assertion at all. Zisook purchased his 200 shares in December 1978 when the stock of A&P was allegedly "artificially depressed" because of the alleged concealment of the formation of the selling group. Since Zisook brought the stock at an artificially depressed price, he paid less for the stock than it was actually worth and he was not in any way damaged by the purchase. Moreover, he did not sell the stock until February 13 and March 21, 1979, *after* a number of Schedule 13D's had been filed and thus after public notice had been given of the formation of the group of stockholders. Since the filings were made prior to the two sales of his stock, the price of his stock was no longer "artificially de-

---

**2.** It should be noted that section 13(d) does not "purport to create a private cause of action for damages in favor of anyone," and "neither con-

fers rights on private parties nor proscribes any conduct as unlawful." *See Touche Ross & Co. v. Redington*, 442 U.S. at 569, 99 S.Ct. at 2485.

pressed" when it was sold and he had at least constructive notice of the formation of the group at that time. Hence, his sales of his stock could not have been caused by a failure on the part of the defendants to file Schedule 13D's, nor did he sustain any damages as a result thereof.

The first cause of action of the amended complaint can be construed to allege a claim that the plaintiff Zisook could have sold his stock at a higher price prior to the date disclosure was actually made if disclosure had been made earlier. The essence of this claim is that Zisook lost an opportunity to sell his stock at a higher price. Under these circumstances, however, Zisook would not be a "purchaser or seller" of stock, and he would thus have no cause of action. In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held that a plaintiff must be either a purchaser or seller of a security to have standing to sue under section 10(b) and Rule 10b–5. Zisook's claim that he could or would have sold his stock at a price that could or would have been higher than that at which he eventually sold had the information concerning the formation of the group been disclosed earlier is precisely the type of speculative but difficult to defend against claim that the *Birnbaum* rule [3] was intended to bar. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. at 737–47, 95 S.Ct. at 1926–31. Moreover, even if it is assumed that a cause of action exists under section 18(a) for the failure to file Schedule 13D's, Zisook would have no claim for relief since he would not have "purchased or sold a security at a price which was affected by [a] statement" that should have been but was not filed. *See* 15 U.S.C. § 78r(a). If Zisook had actually sold his stock *prior* to the filing of the required documents, a very different situation would be posed. Under the facts as alleged, however, Zisook is not entitled to relief.

---

**3.** *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The second circuit in *Birnbaum* held that private damage

### B. *The Second Cause of Action*

The second claim of the amended complaint charges the defendants with using undisclosed material inside information to their own benefit. Other than the information concerning the formation of a selling group discussed above, however, the amended complaint fails to identify with any specificity the material inside information that purportedly should have been but was not disclosed. Paragraph 63 of the amended complaint refers to "inside information contained in the files of [A&P]" including "confidential business data designed to enable the Tengelmann defendants to determine whether, when, and how their European marketing and distribution practices could be applied to the [A&P]." The failure of the amended complaint to provide any specific description of the alleged inside information or when it was obtained is grounds in itself for dismissing this cause of action under Fed.R.Civ.P. 9(b). *See Ross v. A. H. Robins Co.,* 607 F.2d 545, 558 (2d Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). This cause of action, however, is deficient for even more compelling reasons.

The Supreme Court recently held that section 10(b) is not violated by a failure to disclose unless a defendant has a duty to disclose. In *Chiarella v. United States,* 445 U.S. 222, 234, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980), the Court observed:

> Section 10(b) is aptly described as a catch-all provision, but what it catches must be fraud. When an allegation of fraud is based on nondisclosure, there can be no fraud absent a duty to speak. We hold that a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic information.

In a private sale of stock, the duty to disclose runs only to those persons with whom the defendant is trading. *See Maldonado v. Flynn,* 448 F.Supp. 1032, 1039 (S.D.N.Y.

actions for violations of section 10(b) and Rule 10b–5 could only be brought by actual purchasers and sellers of securities.

1978), aff'd in pertinent part, rev'd in part on other grounds, 597 F.2d 789 (2d Cir. 1979). But where open market transactions are involved, the law in this circuit is that the duty to disclose runs to those persons who traded "during the same period" the defendant traded in the open market. Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228, 241 (2d Cir. 1974). But see Fridrich v. Bradford, 542 F.2d 307, 318–19 (6th Cir. 1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977) (in open market transactions, duty to disclose runs only to persons with whom defendant has traded).

With respect to the original private transactions whereby TN Delaware purchased 42 per cent of A&P's stock, the defendants' duty to disclose ran only to those persons actually involved in the transactions; they had no duty to disclose to the plaintiffs or the public generally merely because they possessed nonpublic information, assuming they did in fact possess such information.

The amended complaint also alleges that TN Delaware purchased some 1,000,000 shares of A&P stock on the open market after January 16, 1979. Neither the amended complaint nor any of the materials submitted by plaintiffs alleges that any of these open market purchases were made during the same time plaintiffs purchased and sold their shares. The SEC Form 4's annexed to plaintiffs' memorandum in opposition to the motion to dismiss the original complaint, TN Delaware did not make any open market purchases until the summer of 1979, well after Stromfeld purchased his stock and well after Zisook purchased and sold his stock. Plaintiffs' letter dated February 19, 1980 states that defendants purchased 95,000 shares in open market transactions during October, November and December 1979. A letter submitted by plaintiffs' counsel dated May 12, 1980 further states that the Tengelmann defendants purchased an additional 481,000 shares on the open market on May 2, 1980. Since the plaintiffs have not alleged that they traded their stock during the same period during which defendants traded on the open market, they have not alleged facts that would establish a duty on the part of the defendants to disclose. Hence, the section 10(b) claims must be dismissed.

## C. The Third Cause of Action

The third claim of the amended complaint alleges that the defendants engaged in a tender offer within the meaning of section 14 of the 1934 Act and that they failed to make any of the filings required by that section and the rules and regulations promulgated thereunder. The amended complaint alleges that TN Delaware's acquisition was intended to and did result in the purchase of more than 42 per cent of A&P's stock, that it was intended to and did result in the purchase of a controlling interest, that it involved a selected group of the A&P's shareholders, that it was contingent upon the Tengelmann defendants being able to purchase a significant block of stock, that it was made at a premium price, and that it was made in conjunction with and followed by open market purchases of more than 1,000,000 shares. The amended complaint further alleges that time limits were placed on the defendants' offer, that pressure was put on the offerees to accept, and that the terms of the offer were non-negotiable.

The new allegations set forth in the amended complaint have not "transformed" the transactions in question into a tender offer within the meaning of the Williams Act. The amended complaint still alleges a privately negotiated sale involving a limited number of A&P's shareholders. In Kennecott Copper Corp. v. Curtiss-Wright Corp., 584 F.2d 1195 (2d Cir. 1978), the court upheld a finding that solicitations to buy stock from a dozen institutional stockholders resulting in off-the-floor purchases coupled with open market purchases did not constitute a tender offer. See 584 F.2d at 1206. In Brascan, Ltd. v. Edper Equities, Ltd., 477 F.Supp. 773 (S.D.N.Y. 1979), a broker contacted between 30 and 50 large institutional holders and a dozen large individual holders of the plaintiff company's stock and a large block of stock was subsequently purchased on behalf of the defendant. Judge Leval

held that this was not a tender offer, but rather, a privately negotiated sale. He observed that "[s]uch privately negotiated block trading is done on a daily basis in the U.S. securities markets without anyone's ever suspecting that what is being practiced is a tender offer." 477 F.Supp. at 790. The transactions at issue herein are not significantly different from those in question in *Kennecott Copper* and *Brascan*. The defendants herein engaged in privately negotiated block trading, which is not covered by section 14(d). There are no allegations in the amended complaint that the Tengelmann defendants exerted any pressure on any A&P shareholders "to make uninformed, ill-considered decisions to sell." *Kennecott Copper Corp.*, 584 F.2d at 1207.[4]

The Supreme Court has held that "the sole purpose of the Williams Act [is] the protection of investors who are confronted with a tender offer." *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977). The Williams Act "is designed 'to ensure that [investors] will not be required to respond [to a tender offer] without adequate information.'" *Lewis v. McGraw*, 619 F.2d 192 at 195 (2d Cir. 1980) (brackets in original), *quoting Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975). The plaintiffs herein were never "confronted with a tender offer," and they were never placed in a position where they were "required to respond [to a tender offer] without adequate information." Section 14 is simply not applicable to this case.

#### D. *Rule 9(b)*

The original complaint was dismissed in part for failing to allege the circumstances surrounding fraud with sufficient particularity. Although the amended complaint is much improved in this respect, it is still insufficiently specific to meet the requirements of Fed.R.Civ.P. 9(b). Although some 23 documents have been identified in the

amended complaint, no attempt has been made to pinpoint what representations in those documents were allegedly misleading or what information should have been included but was not. As noted above, other than the charges concerning the nondisclosure of the formation of the alleged selling group and a vague reference to "confidential business data," the amended complaint contains no description of what material inside information was not disclosed. Moreover, although the amended complaint divides the 22 defendants into "primary defendants" and "aiders and abettors," it does not adequately apprise each defendant of the fraudulent conduct with which he is individually charged. The amended complaint is also insufficiently specific as to when the alleged selling group was formed; this poses significant problems because section 13(d) is only violated if the necessary documents are not filed within 10 days of the formation of a group.

#### CONCLUSION

The first, second and third causes of action must be dismissed for failure to state a claim upon which relief can be granted and for failure to plead fraud with sufficient particularity. The claim for injunctive relief must be dismissed because the plaintiffs fail to allege valid causes of action under sections 10(b), 14 and 18(a) and because defendants have in fact filed schedule 13D's. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. at 59, 95 S.Ct. at 2076. The remaining pendent claims for violations of state law must also be dismissed, since all of the federal claims are being dismissed.

The motion to dismiss is granted; the amended complaint is hereby dismissed in its entirety with prejudice.[5]

SO ORDERED.

---

4. The second circuit observed in *Kennecott Copper* that some courts and commentators have urged that methods of stock acquisition which exert pressure on shareholders to make "uninformed and ill-considered decisions" should be treated as tender offers for purposes

of the Williams Act. The court noted, however, that the second circuit has not yet gone that far. 584 F.2d at 1207.

5. The defendants' motion for a stay of discovery is therefore rendered moot.