SHAMROCK ASSOCIATES, Plaintiff,

v.

HORIZON CORPORATION, MCO Holdings, Inc., MCO Properties Inc., Charles E. Hurwitz, William C. Leone, and John E. Sommerhalder, Defendants.

HORIZON CORPORATION, MCO Properties Inc., Counterclaimants,

v.

SHAMROCK ASSOCIATES, Natalie I. Koether, Paul O. Koether, Ingalls & Snyder, David B. Blanchard, Myron S. Gelbach, John Does "A" Through "Z", constituting the limited partners of Shamrock Associates, and Richard Roes 1 Through 100, constituting the unknown customers of Ingalls & Snyder, Counterclaim-Defendants.

No. 85 Civ. 6401 (GLG).

United States District Court, S.D. New York.

April 9, 1986.

Christy & Viener, New York City (Franklin B. Velie, of counsel), and Koether Harris & Hoffman, New York City (Mathew E. Hoffman, of counsel), for plaintiff Shamrock Associates.

Golenbock, Eiseman, Assor, Bell & Perlmutter, New York City (Jeffrey T. Golenbock, of counsel), for defendant Horizon Corp.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Stephen T. Atkins, Gregory A. Danilow, Arthur H. Aufses, Elizabeth Lederer, of counsel), for defendants MCO Properties Inc., MCO Holdings, Inc., Charles E. Hurwitz, William C. Leone and John E. Sommerhalder.

## OPINION

GOETTEL, District Judge:

The defendants, Horizon Corporation ("Horizon"), MCO Holdings, Inc., and MCO Properties, Inc. (collectively "MCO"), Charles E. Hurwitz, William C. Leone, and John E. Sommerhalder, move to dismiss Shamrock Associates' ("Shamrock") claims arising under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b) (1982), and Rule 10b–5 promulgated there-

under, 17 C.F.R. § 240.10b–5 (1985) (collectively the "Rule 10b–5 claim"), and under section 13(e) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78m(e) (1982), and Rule 13e–3 promulgated thereunder, 17 C.F.R. § 240.13e–3 (1985) ("the Rule 13e–3 claim"). As discussed below, the defendant's motion is granted in part, and denied in part.

## I. BACKGROUND [1]

Shamrock is a New Jersey limited partnership. Horizon is a Delaware corporation with its principal place of business in Arizona. Its common stock is traded on the New York Stock Exchange (the "NYSE"). Horizon is principally engaged in the business of buying, holding, developing, and selling real estate in Arizona, Texas, and New Mexico. MCO Holdings is a Delaware corporation with its principal place of business in California. MCO Properties, a Delaware corporation with its principal place of business in California, is a wholly-owned subsidiary of MCO Holdings. Defendant Charles E. Hurwitz is a director of Horizon and is chairman of the board, chief executive officer, and director of MCO Holdings. Defendant William C. Leone is president, chief executive officer, and a director of Horizon and is president and a director of MCO Holdings. Defendant John E. Sommerhalder is a director of Horizon and an officer of MCO Properties.

Throughout the 1980's, Horizon has experienced financial difficulties. In mid-1984, Horizon faced what its board described as "substantial liquidity problems." In late June 1984, Horizon reached an agreement with MCO that it hoped would alleviate its cash flow problems and provide management assistance. Pursuant to the agreement, MCO paid Horizon $2.8 million for 339,152 shares of Horizon common stock (priced at $8.27 per share) and MCO acquired an option exercisable at any time between December 29, 1984 and June 29, 1989, to acquire an additional 678,304

shares of Horizon common stock at an option price of $8.27 per share. MCO and Horizon also entered into a management agreement pursuant to which MCO's personnel have provided Horizon with management, office, data processing, and other services. MCO also negotiated on behalf of Horizon a new $25 million revolving credit agreement. The lending bank insisted that MCO commit to guarantee up to $5 million of Horizon debt and to provide Horizon with up to $5 million in additional funds, if needed.

Pursuant to the MCO-Horizon agreement, the Horizon Board of Directors was expanded to ten members, with MCO initially designating three representatives. The Horizon Board currently consists of five MCO representatives and five directors free of ties to MCO. Defendants Hurwitz, Leone, and Sommerhalder are three of the Horizon directors with such ties.

Prior to June 11, 1985, MCO held approximately 17.8% of the shares of Horizon common stock. On June 11, 1985, the Horizon Board unanimously approved issuance of a subordinated convertible promissory note to MCO in the amount of $3 million. MCO loaned Horizon $3 million as partial consideration for the note. The note was convertible to 705,882 shares of MCO stock at a price of $4.25 per share. In exchange, MCO agreed to lend Horizon up to $3 million before December 31, 1985.

At the June 11 meeting, Horizon's counsel informed the board that the issuance of the convertible note without stockholder approval might well precipitate a proceeding by the New York Stock Exchange, on which Horizon stock was trading, to delist Horizon's stock. The directors, nevertheless, authorized the note's issuance without stockholder approval. The NYSE subsequently commenced delisting proceedings; however, those proceedings have been

---

**1.** Some of the facts set forth herein are taken from our earlier memorandum decision, *Shamrock Associates v. Horizon Corp.*, No. 85 Civ. 6401, slip op. (S.D.N.Y. Oct. 17, 1984). We note further that the Court has included only background essential to the disposition of this motion.

stayed pending a review by the NYSE of its own delisting rules and procedures. Ten days after the Board approved the convertible note transaction, Shamrock issued its first statement pursuant to S.E.C. rule 13d, 17 C.F.R. § 240.13d (1985), disclosing its ownership interest in Horizon's outstanding shares.

On August 9, 1985, Horizon's board authorized it to enter into another transaction with MCO. Under that arrangement, Horizon relinquished its right to borrow the additional $3 million available to it under the convertible note agreement, and instead gave MCO 600,000 shares of voting preferred stock in exchange for $3 million. Shamrock asserts that the preferred stock transaction was designed solely to strengthen and preserve MCO's control of Horizon.

During the same August 9 meeting, the MCO board took two other actions that are now the subject of contention. The by-laws were modified to require advance notice of the composition of dissident director slates and to permit the chairman of the shareholder meeting to disallow nominations that did not comply with the advance notice provisions. The MCO board also adopted a provision requiring 75% of the shareholders to approve any by-law changes not proposed by management. Shamrock charges that the Horizon board adopted these two by-law amendments with the same haste and absence of forethought that characterized the other changes.

On August 5, 1985, Shamrock commenced this derivative suit alleging that Horizon had breached its fiduciary duty to its shareholders, as well as violated various provisions in the federal and state securities laws. On September 12, 1985, MCO redeemed the convertible note, thereby increasing its ownership interest in Horizon's outstanding stock to 37.2%. On September 18, 1985, Shamrock served an amended complaint, and moved—unsuccessfully—for a temporary restraining order enjoining MCO from making any additional purchases of Horizon stock. On September 20, 1985, Shamrock announced a tender offer for up to 51% of Horizon's shares, offering for each share $6.00 plus a certificate of participation in the proceeds to be derived from liquidating Horizon's assets. The amended complaint alleges that between September 5 and October 5, 1986, MCO purchased 450,000 additional Horizon shares in the open market.

The amended complaint contains five claims arising out of the transactions and events detailed above. In its first claim, Shamrock contends that Horizon failed to make certain disclosures that SEC Rule 13e–3 requires. The second claim charges that Horizon's board breached its fiduciary obligations to Horizon's shareholders in approving the above-noted transactions and by-law changes. Shamrock's third cause of action purports to assert the identical claim derivatively on behalf of Horizon's other unaffiliated shareholders. The fourth claim is a derivative and individual claim asserting that MCO purchased Horizon stock between September 5 and October 3, 1985 while in the possession of material, inside information in violation of both Rule 10b–5 and Delaware common law. The fifth cause of action is a claim under section 13(d) Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and rule 13d promulgated thereunder, 17 C.F.R. § 240.-138 (1985), alleging that MCO has made false and misleading statements on its Schedule 13D and Amendments thereto.

The motions before us seek to dismiss the bulk of these claims. The defendants move pursuant to Fed.R.Civ.P. 23.1 to dismiss the derivative claims because Shamrock is not an adequate shareholder representative and because Shamrock failed to make a demand on the Horizon board before commencing its derivative action. The defendants also move, pursuant to Fed.R.Civ.P. 9(b), to dismiss Shamrock's Rule 10b–5 claim for failure to plead fraud with particularity. Finally, the defendants move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Shamrock's Rule 13e–3 claim.

## II. DISCUSSION

### A. Motion to Dismiss the Derivative Claims

In a derivative action, one or more shareholders seeks to enforce a right of the

corporation that the corporation itself has failed to enforce. Because the action is brought on behalf of the shareholders, the derivative class representative must satisfy the Court that it will adequately represent the shareholders. Moreover, the plaintiff must satisfy the Court of its inability to obtain the consent of the corporate directors to maintain the action. In this case, the defendant claims that Shamrock has met neither requirement.

### 1. The Demand Requirement

■ Generally, as a prerequisite to bringing suit, a derivative plaintiff must demonstrate to the court's satisfaction that it has tried and failed to induce the directors to bring the desired action.[2] *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1017 (2d Cir.1984). However, if the plaintiff can demonstrate that any demand would have been futile, the demand requirement may be excused. *Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983).

The defendants move to dismiss their derivative suit, because Shamrock did not make a demand on Horizon's board. Shamrock contends that the composition of the board would render any such demand futile and that the demand requirement is thereby excused.

The law of this Circuit holds that a demand is "presumptively futile where the directors are antagonistic, adversely interested, or involved in the transaction." *Lewis v. Graves, supra*, 701 F.2d at 248. Futility is presumed when a majority of the directors participated and/or acquiesced in the underlying wrongdoing. *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 262 (2d Cir.1984); *Kaster v. Modification Systems, Inc., supra*, 731 F.2d at 1017. In such a case, the directors lack the requisite disinterestedness to fairly determine whether

the corporate claim should be pursued. *Lewis v. Graves, supra*, 701 F.2d at 249.

In this case, MCO's designees, who comprised 50% of the seats on Horizon's board, approved the Horizon-MCO transactions. Without their acquiescence, Horizon could not have obtained approval for the transaction.[3] Given MCO's self-interested participation in the board's deliberations, the Court must infer that any demand upon Horizon's board would have been futile. Shamrock was, therefore, excused from making such a demand prior to commencing this derivative suit.

### 2. Adequate Representation

■ The defendants contend that Shamrock's interest in maintaining these derivative claims conflicts with that of other Horizon shareholders. Consequently, they move to dismiss the plaintiff's derivative claims because Shamrock "does not fairly and adequately represent the interests of the shareholders ... similarly situated in enforcing the right of the corporation...." Fed.R.Civ.P. 23.1.

In examining the suitability of a particular derivative class representative, the courts focus on the vigor with which the representative will prosecute the corporate claim and the community of interest between the plaintiff and the proposed stockholder class. *Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y.1982); *Sweet v. Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y. 1975). In this case, the plaintiffs have demonstrated their intention to vigorously prosecute the corporate claim. The crucial question remaining under Rule 23.1 is whether some antagonism or conflict of interest between Shamrock and the other unaffiliated shareholders it seeks to represent renders Shamrock an inadequate derivative class representative. The defendants contend that interests diverge because

---

**2.** Fed.R.Civ.P. 23.1 provides in pertinent part, The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and

the reasons for his failure to obtain the action or for not making the effort.

**3.** In fact, Horizon's 1985 Form 10–K stated that "MCO may be deemed a controlling person of [Horizon]." Appendix to Answering Affidavit, Exhibit B at 4.

Shamrock is a potential purchaser of Horizon stock, while the other shareholders are potential sellers, but this conflict is more imagined than real. Both Shamrock and the other shareholders have an interest in preventing MCO from locking up control of Horizon and discouraging other suitors from bidding for Horizon's shares. Although Shamrock has an additional interest in acquiring Horizon stock at the lowest possible price, its primary interest appears to be in an acquisition. That interest corresponds with that of Horizon's other unaffiliated shareholders who, no doubt, desire competitive bidding for their shares. Shamrock's proposal to share with other shareholders the proceeds of a Horizon liquidation increases the community of interests between Shamrock and the class of shareholders it seeks to represent.

In *Tyco Laboratories, Inc. v. Kimball*, 444 F.Supp. 292 (E.D.Pa.1977), the plaintiffs, shareholders in Leeds & Northrup Company ("Leeds"), brought a derivative action on behalf of Leeds alleging that its directors had sold stock at below market price to another entity thereby thwarting the plaintiff's planned takeover. The complaint alleged that the plaintiffs would have paid far more for the contested shares than Leeds actually received. The court found that the derivative plaintiffs shared with the other stockholders the common interest of seeking redress from the defendants for breaching their fiduciary duties or for other violations of federal or state securities and business corporation laws. *Id.* at 298–99. The court would not disqualify the plaintiff for having an additional economic interest in the derivative suit beyond those of the other shareholders. It pointed out that "[a] plaintiff is not disqualified under Rule 23.1 merely because of the existence of interests beyond those of the class he seeks to represent, so long as he shares a common interest in the matter of the suit." *Id.* at 298–99 (quoting

*G.A. Enterprises, Inc. v. Leisure Living Committees, Inc.*, 517 F.2d 24 (1st Cir. 1975)). Likewise, Shamrock's interest in pursuing control will not prevent it from vigorously pursuing the claims of the other unaffiliated shareholders. Since the defendants have failed to meet their burden of establishing inadequate representation, the defendants' motion to dismiss the plaintiff's derivative claims is denied.[4]

### B. Motion to Dismiss for Failure to Plead Fraud with Particularity

■ Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud ... the circumstances constituting the fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Mere conclusory allegations that the defendant's conduct was fraudulent are not enough. *Decker v. Massey-Ferguson, Ltd.* 681 F.2d 111, 114 (2d Cir.1982). Instead, the complaint must allege with some specificity the act or statements constituting the fraud. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). When a claim of fraud is based on a charge of non-disclosure of inside information, the pleadings must describe the information that the defendant allegedly failed to disclose, *State Teachers Retirement Board v. Flour Corp.*, 500 F.Supp. 278, 285 (S.D.N.Y.1980), *aff'd in part and rev'd in part*, 654 F.2d 843 (2d Cir.1981); *Stromfeld v. Great Atlantic and Pacific Tea Co.*, 496 F.Supp. 1084, 1089 (S.D.N.Y.1980), *aff'd without op.*, 646 F.2d 563 (2d Cir.1980), and when the defendant acquired that information. In addition, a complaint alleging fraud will not satisfy Rule 9(b) if pleaded solely on information and belief, *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972), unless the pleading concerns matters peculiarly within the adverse party's knowledge. In the latter instance, a statement of facts upon which the belief is founded

---

**4.** The defendants assert that the second claim for relief is actually a derivative claim that cannot be asserted individually. They move to dismiss this claim on the same grounds they have moved to dismiss the other derivative claims. Since we have denied the motions to dismiss those claims, we need not, at this time, decide whether the fiduciary duty claim is derivative in nature. The motion to dismiss the second claim is denied.

must accompany the pleading. *Id.* at 608; *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 n. 4 (S.D.N.Y.1981), *aff'd without op.*, 697 F.2d 296 (2d Cir.1982); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977).

■ In paragraph 21 of its amended complaint, Shamrock asserts that MCO, through its domination of Horizon's Board of Directors, "has become privy to material and confidential, material, inside information for its own private purposes, including the purchase of Horizon stock." In paragraph 40, Shamrock states that MCO's open market purchase violated section 10(b) of the Exchange Act and Rule 10b–5, because these purchases were made by MCO "while in possession of confidential, inside information." Nowhere does Shamrock allege what inside information was obtained or when MCO obtained that information.[5] In addition, the complaint purports to base all of its allegations against MCO on information and belief yet provides no indication of the facts upon which its belief is founded. Because Shamrock has utterly failed to satisfy the requirements of Rule 9(b), the defendants' motion to dismiss the Rule 10b–5 claim is granted with leave to replead within 20 days.

### C. Motion to Dismiss the Rule 13e–3 Claim

Shamrock alleges that Horizon ran afoul of SEC Rule 13e–3 when, upon issuing the convertible note, it failed to make the disclosures mandated by that rule. Rule 13e–3 requires an issuer of securities who engages in a "going private" transaction to disclose that transaction on a Schedule 13e–3, 17 C.F.R. § 240.13e–100 (1985). The rule lists several types of "going-private transactions." The category with which we are concerned includes "[a] purchase of any equity security by the issuer of such security or by an affiliate of such issuer," 17 C.F.R. § 240.13e–3(a)(3)(i)(A), "which

has ... a reasonable likelihood ... either directly or indirectly," *id.* at § 240.13e–3(a)(3), of "[c]ausing any class of equity securities of the issuer which is either listed on a national securities exchange or authorized to be quoted in an inter-dealer quotation system of a registered national securities association to be neither listed on any national securities exchange nor authorized to be quoted on an inter-dealer quotation system of any registered national securities association." *Id.* at § 240.13e–3(a)(3)(ii)(B).

■ The defendants accept for purposes of this motion the pleaded facts that (1) MCO was a Horizon affiliate; (2) the issuance of the convertible note amounted to the purchase by MCO of an equity security; and (3) Horizon did not file a Schedule 13e–3. The defendants, nevertheless, contend that the Rule does not apply because Horizon's shares have yet to be delisted. There is little to this argument. Rule 13e–3 merely requires a reasonable likelihood that delisting will occur. The defendants admit that the NYSE has commenced delisting proceedings (albeit, those proceedings have been stayed). This allegation suffices to withstand a motion to dismiss for failure to allege a reasonable likelihood of delisting. Indeed, conclusory allegations of a "reasonable likelihood" probably suffice to withstand a motion to dismiss a claim under Rule 13e–3.

■ More troublesome is the defendants' contention that Rule 13e–3's requirements do not apply so long as there remains the possibility that Horizon may list its stock on another exchange or over-the-counter. The defendants contend that in the event that the NYSE does delist Horizon's common shares, Horizon can list these shares on another exchange or authorize them to be quoted on an inter-dealer quotation system. We decline to adapt this narrowly

---

5. At pages 28–31 of its Memorandum in Opposition to Defendants' Motion to Dismiss, the plaintiff lists numerous factual assertions that purportedly support its insider trading claim. If pleaded, these facts might well supply the neces-

sary allegations of fraud. Absent their inclusion in the amended complaint, we need not decide whether facts sufficient to state a claim under Rule 10b–5 have been pleaded.

restrictive reading which contravenes the rule's language, history, and underlying policy.

Although not unequivocal, the language of the Rule appears to speak in terms of present possibilities not future potentialities. The rule regulates transactions with a reasonable likelihood of causing securities *"to be* neither" (emphasis added) listed on any national exchange nor authorized to be quoted over-the-counter. A transaction which, despite delisting on one exchange, leaves an issuer free to list on another exchange or to obtain over-the-counter authorization is still prohibited. Likewise, if, after delisting from an exchange, the stock remains listed on another exchange or authorized to be traded over-the-counter, Rule 13e–3 is implicated. The SEC's own interpretation is in accord. In its release announcing adoption of the Rule, the Commission stated, "delisting of a class of equity securities from an exchange would not trigger the application of Rule 13e–3 if the securities were nevertheless authorized to be quoted on an inter-dealer quotation system of a registered national securities association." Rule 13e–3 Exchange Act Release No. 33–6100 (August 2, 1979), *reprinted in* A. Borden, *Going Private* (1984), Appendix A–1 at A–7. The policy underlying Rule 13e–3 also supports our interpretation. Rule 13e–3 seeks to "protect investors 'from exploitation by corporate insiders.'" Rule 13e–3 Exchange Act Release No. 14185 [1977–78] Fed.Sec.L. Rep. § 81,366 at 88,744. The rule ensures that investors will have fair notice that the stock is to be delisted and that they may soon experience difficulty trading their shares. Were the rule invoked only when there was no possibility of obtaining a listing, the shareholders would be faced, without prior disclosure, with a temporary freeze on the ability to publicly trade their shares. The failure to disclose the disfavored situation would contravene the policy underlying the rule.

Horizon's stock is currently listed only on the NYSE. Construing the pleadings in a manner most favorable to the non-moving party, as we must on this motion to dismiss, we assume that Horizon had yet to obtain authorization for its shares to trade on an inter-dealer quotation system of a registered national securities association when it issued the convertible note. Although Horizon may obtain such authorization or seek an alternative listing, this does not diminish the impact of Shamrock's allegation that an NYSE delisting would leave Horizon's shareholders temporarily unable to publicly trade their stock. Even if the deprivation were shortlived, it would contravene the letter and spirit of Rule 13e–3 to ignore that rule in these circumstances. Hence, we reject the defendants' argument that an intention to list on another exchange or to authorize over-the-counter trading precludes application of Rule 13e–3. The defendants' motion to dismiss the Rule 13e–3 claim is denied.

## III. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the Rule 10b–5 claim is granted with leave to replead within 20 days; the defendants' motion to dismiss the plaintiff's derivative claims is denied. We also deny the defendants' motion to dismiss the Rule 13e–3 claim.

SO ORDERED.